# Group Exhibit A

# Exhibit A-1

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT – CIVIL DIVISION** |
| **COUNTY OF WINONA** | **THIRD JUDICIAL DISTRICT** |

| | |
|---|---|
| Sheila M. Dunn, | Hon. Nancy L. Buytendorp |
| Plaintiff, | Case Type: Employment |
| v. | Case No. 85-CV-21-1472 |
| | **AMENDED COMPLAINT** |
| Associates in Psychiatry and Psychology, P.A. and Does 1–20, | |
| Defendants. | |

Plaintiff, Sheila M. Dunn, states and alleges as follows:

## THE PARTIES

1.      Ms. Dunn is a natural person who resides in Winona County, Minnesota.

2.      Defendant Associates in Psychiatry and Psychology, P.A. ("APP") is a Minnesota limited liability company with its primary place of business in Rochester, Minnesota and that provides service throughout the State of Minnesota.

3.      Upon information and belief, Defendants Does 1–5 are individuals of unknown residence.

4.      Upon information and belief, Defendants Does 6–10 are individuals of unknown residence.

5.      Upon information and belief, Defendants Does 11–15 are entities of unknown corporate form and residence.

6.      Upon information and belief, Defendants Does 16–20 are entities of unknown corporate form and residence

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter because the actions and omissions giving rise to the action occurred primarily in the State of Minnesota.

8.      Winona County is the proper venue for this matter because Ms. Dunn resides in Winona County and at all times while providing telemedicine services described in this Complaint did so from her home in Winona County.

## FACTUAL BACKGROUND

9.      This case arises from Ms. Dunn's employment with APP, which began in or around May of 2020.

10.     Ms. Dunn is a registered nurse and certified nurse practitioner who served in that role at APP in her first position following earning her nurse practitioner certification.

11.     In April of 2020, APP offered employment to Ms. Dunn, and she accepted.

**The Written Employment Agreement**

12.     Later, to memorialize the employment relationship, APP forwarded to Ms. Dunn a written contract of employment (the "Employment Agreement"), a copy of which is attached as Exhibit 1.

13.     The Employment Agreement was at least partially incomplete, omitting various numbered paragraphs and failing to include information required by Minn. Stat. § 181.55.

14.     While the Employment Agreement acknowledged Ms. Dunn's status as an employee, it purported to compensate her based upon an illegal profit-sharing scheme.

15.     Specifically, the Employment Agreement provides as follows:

> **Compensation.**   The parties agree that, as for compensation employee will be paid sixty percent (60%) of collected receivables, which shall be understood to be those payments already collected and listed as 'payments' on the Monthly Provider Summary Report prepared by Employer's billing department and approved by

2

> Employer on the revenue that Employee personally generates for
> APP per month for each specific month, less all applicable local,
> state and federal withholdings, or other deductions employee wishes
> to take (examples: set asides for health savings account, medical or
> retirement savings accounts). Employee agrees that payment shall
> be made by Employer to Employee (or directly deposited by
> Employer to Employee's personal bank account), every other Friday
> based on the prior period's receipts and Employee shall sign all
> appropriate forms in a timely manner to facilitate payment. Should
> there be a holiday on one of these dates, paychecks will be deposited
> the following business day. Employee further understands that all
> case notes must be completed in order to bill for the session.

Employment Agreement, p. 2, ¶ 1.

16.     Upon information and belief, APP used the same or similar illegal language in its contracts with other employees.

17.     APP failed to provide the beginning-of-employment notices required by Minn. Stat. § 181.032(d).

18.     Throughout Ms. Dunn's employment, APP failed to provide accurate and complete earning statements as required by Minn. Stat. § 181.032 and the contract itself.

19.     Ms. Dunn regularly worked without pay on days when she was supposed to be relieved of duty for time off or to attend training.

20.     During these times she answered questions from patients and coworkers, often to the extent that she was unable to complete training exercises.

21.     Ms. Dunn made multiple requests for APP to provide her with Current Procedural Terminology ("CPT") codes and policies so that Ms. Dunn could bill patients properly.

22.     APP refused to provide all relevant CPT codes and policies.

23.     In June 2021, Ms. Dunn reported to APP that patients may be improperly billed because she was unsure of what needed to be included in notes to meet billing requirements for billing the codes APP required her to use.

24.     A short time after Ms. Dunn's report, APP summarily terminated Ms. Dunn's employment.

25.     APP has refused—and continues to refuse—to provide calculations showing the basis for and calculations of her compensation.

26.     APP has claimed to have "reason to believe" Ms. Dunn violated certain restrictive covenants but has failed to provide any evidence of those allegations.

27.     Upon information and belief, Defendants did not keep records of hours Ms. Dunn worked.

28.     APP paid Ms. Dunn less than the mandatory minimum wage for, at a minimum, the first and last months of Ms. Dunn's employment.

29.     APP has made vague legal threats to Ms. Dunn and the group with which she plans to provide care as an independent contractor.

30.     Multiple patients have informed Ms. Dunn that they need prescription refills, but they are not able to get them because APP refuses to authorize refills unless those patients come in for an appointment that is not available until after they run out of medication.

31.     APP has blamed Ms. Dunn for patient confusion although APP failed to comply with its contractual obligation to provide patients with a letter informing them of Ms. Dunn's departure, and for weeks after her departure her name, biography, and image were still on APP's website.

**Contractual Language**

32.     The alleged restrictive covenants in the Employment Agreement are stated in several contradictory ways.

33.     However, APP relies upon a provision without any geographic or practice scope limitations:

> Employee further agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, Employee shall not, for any reason, without written consent by Employer, either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient . . . .

Employment Agreement, p. 5, ¶ 9.

34.     APP relies upon this provision in its cease and desist letter to Ms. Dunn.

35.     Two other provisions purport to apply to Ms. Dunn if her employment is involuntarily terminated, but the provision APP seeks to enforce does not apply in that circumstance.

36.     The contract provides as follows:

> Employee further understands that Employer shall write an official letter to patients informing them of the Employees [sic] separation from the group and that the Employee will have the opportunity to co-sign the letter.

Employment Agreement, p. 6, ¶ 10.

37.     Not only did APP not comply with this provision, but its agents also attacked and blamed Ms. Dunn for the resulting patient confusion.

38.     Instead of complying with the terms of the Employment Agreement, APP forced Ms. Dunn to expend many hours of unpaid work informing patients individually of her departure.

39.     Ms. Dunn offered APP the opportunity to provide evidence that it complied with the Employment Agreement, and APP again declined.

40.     APP appears to be concerned that Ms. Dunn has responded to patient inquiries regarding where she now plans to practice, but APP had declined to clarify what evidence it has of any conduct even potentially violative of the Employment Agreement.

85-CV-21-1472

Filed in District Court
State of Minnesota
3/4/2022 2:25 PM

41.     Ms. Dunn invited APP to provide any legal authority that responding to patient inquiries could ever constitute improper competition or solicitation, even assuming an enforceable noncompete, and APP has not provided any.

**Personnel Records**

42.     Ms. Dunn has demanded a copy of her personnel records in accordance with Minnesota law.

43.     To date, Ms. Dunn's personnel records have not been provided to her.

**Demand for Payment of Wages**

44.     Ms. Dunn has demanded in writing payment of all earned unpaid wages.

45.     To date, APP has refused to provide Ms. Dunn a calculation of her wages or any payment of those wages yet unpaid.

**Underpayment**

46.     Even based upon APP's illegal proposed compensation model, APP underpaid Ms. Dunn.

47.     For example, her commissions in the first quarter of 2021 appear to her to be significantly less than would be required, given her treatment of patients in the final quarter of 2020.

48.     Despite Ms. Dunn's request, APP has not provided the financial records showing the computation of Ms. Dunn's compensation.

49.     At a minimum, Ms. Dunn worked for the first two months of her employment with no compensation.

50.     In addition, APP has not paid Ms. Dunn for the last month of her work.

Filed in District Court
State of Minnesota
3/4/2022 2:25 PM

51.     Notably, this period of time included many hours of "transition" work that could not have been compensated by fee sharing even if APP had properly compensated her with fee sharing.

52.     The Employment Agreement indicates that Ms. Dunn would not be paid for much of her work performed over three full months because she did not give notice of her termination and APP had not yet been paid by patients or third-party payors:

> Employee shall continue to receive payments on receivables for ninety (90) days following the Employee's last date of employment on the following conditions: a) Employee has timely submitted the charge slips as described in paragraph #3 above; and b) Employee has given Employer ninety (90) days' notice. **Should the conditions of a through herein [sic] not be complied with, Employee acknowledges and agrees that she shall be paid only up to and including Employee's last day of employment, and only for prior billed and/or collected receipts as described in paragraph #3 above.** Employee agrees that any receivables still outstanding for services after last day of employment and past the 90-day period shall go towards Employer's recouping costs associated with advertising and hiring a new Employee.

Employment Agreement, p. 6, ¶ 10 (emphasis added).

53.     This provision conditions payment upon the application of "paragraph #3," which does not exist, and then only allows for payment of "billed and/or collected receipts[.]"

54.     Because APP has not provided any additional compensation or documentation regarding Ms. Dunn's compensation, presumably it believes this provision overrides Minnesota law.

55.     While it has not said so expressly, APP apparently relies upon this provision for its refusal to compensate Ms. Dunn for work performed toward the end of her employment.

**Wrongful Termination/Whistleblower Violation/Violation of MHRA**

56.     Ms. Dunn demanded information regarding her billing and wages and was only once provided any such information.

Filed in District Court
State of Minnesota
3/4/2022 2:25 PM

57.     Ms. Dunn made this demand in January of 2021 and was provided with incomplete information.

58.     APP refused to provide the information, claiming Ms. Dunn had already been provided with the information.

59.     APP did not explain why, even if that were true, Ms. Dunn would not be allowed to review a second copy of the information she needed to accurately bill patients.

60.     In early June 2021 the CEO of APP, Seth Franz, sent an email requesting to meet individually with the providers on a quarterly basis to better get to know the providers.

61.     Ms. Dunn scheduled a meeting with him for July 9, 2021.

62.     On July 1, 2021, Ms. Dunn had a pre-scheduled meeting with the clinical manager.

63.     At that meeting, Ms. Dunn complained that she needed additional information regarding how to code her billing properly.

64.     The clinical manager asked if Ms. Dunn was suggesting that the billing was fraudulent, and Ms. Dunn indicated she was not sure because she had not been provided with the requested information.

65.     At that meeting, APP criticized Ms. Dunn's work for the first time, and, asked what APP could do to support her work.

66.     Ms. Dunn indicated that she, while she did not agree with the criticisms, she had been having difficulty concentrating and had recently been diagnosed with attention deficit/hyperactivity disorder.

67.     Ms. Dunn met with Mr. Franz on July 9, 2021 as scheduled.

68.     At that meeting, APP terminated Ms. Dunn's employment.

69.     APP engaged in no interactive process to address whether Ms. Dunn had a disability or how APP could accommodate her.

70.     Shortly thereafter, APP terminated Ms. Dunn's employment.

71.     APP then interfered with Ms. Dunn's right to treat any patients.

72.     As a result of Defendants' actions, Ms. Dunn has suffered severe mental anguish and distress.

73.     Upon information and belief, Defendants Does 1–5 were also employers of Ms. Dunn or were joint employers of Ms. Dunn.

74.     Upon information and belief, Defendants Does 6–10 are APP's owners, agents or otherwise liable for the acts and omissions alleged in this Complaint.

75.     Upon information and belief, Defendants Does 11–15 were also employers of Ms. Dunn or were joint employers of Ms. Dunn.

76.     Upon information and belief, Defendants Does 16–20 are APP's owners, agents or otherwise liable for the acts and omissions alleged in this Complaint.

## CLAIMS

### COUNT I
### DECLARATORY RELIEF
### Uniform Declaratory Judgments Act
### Minn. Stat. § 555.01, *et seq.*
### (Against Defendant APP)

77.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

78.     As described in detail above, a present and judiciable controversy has arisen between the parties with regard to the Employment Agreement.

79.   APP has contended that various alleged restrictive covenants are binding and enforceable and prevent Ms. Dunn from seeing any patients.

80.   Specifically, through its counsel, APP wrote to Ms. Dunn on August 11, 2021 contending that the Employment Agreement "provides that during your employment with APP and for six months thereafter you 'shall not, for any reason without written consent by [APP], either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient . . . .'"

81.   APP's counsel further threatened "APP has authorized us to take any and all measures, including legal action, to protect it from further harm and to compensate it for any damages[]" and threatened "the imminent potential for litigation . . . ."

82.   The alleged restrictive covenants are not enforceable against Ms. Dunn for several reasons, including lack of consideration, failure of consideration, material breach, unclean hands, illegality, overbreadth, and ambiguity.

83.   Nurse practitioners are not exempt employees for wage payment purposes unless they satisfy both the primary duties and the salary basis test.

84.   Because an agreement to pay an employee solely on a revenue basis is illegal, any reciprocal obligations on the part of the employee are also illegal and unenforceable.

85.   Ms. Dunn requests a declaration from this Court that the purported restrictive covenants are not enforceable.

### COUNT II
### BREACH OF CONTRACT
### (Against Defendant APP)

86.   Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

87.     The Employment Agreement exists between Ms. Dunn and APP as enforceable against APP because, to the extent the Employment Agreement provides for greater rights or compensation than would otherwise be legally required, such standards are incorporated into the legal compensation to be paid by statute and such contractual provisions are severable from the illegal or unenforceable provisions of the Employment Agreement pursuant to ¶ 17 of the Employment Agreement.

88.     The illegality of the compensation provision does not save an employer from paying the agreed-upon higher compensation if it is higher than would otherwise be provided by law.

89.     APP's actions and omissions, as more fully described above, breached the Employment Agreement including, without limitation, failure to pay Ms. Dunn's wages at the agreed upon rate and failure to properly advise patients of the end to Ms. Dunn's employment.

90.     All conditions precedent to APP's performance under the contact have been met.

91.     Ms. Dunn has suffered damages as a result of the breach of contract.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendant APP)

92.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

93.     Each contract in the State of Minnesota includes an implied covenant to act in good faith and deal fairly with other parties to the contract.

94.     APP's actions, as more fully detailed above, breached its duty to perform under the contract addressed in Count II and to deal fairly with Ms. Dunn, including its refusal to notify

patients of Ms. Dunn's departure, as required by the contract, then faulting her for the resulting patient confusion.

95.    Upon information and belief, APP intentionally miscalculated Ms. Dunn's compensation.

96.    APP failed—and continues to fail—to provide any support for its calculations of Ms. Dunn's compensation.

97.    Ms. Dunn has suffered damages as a result of those breaches, including earned but unpaid compensation.

**COUNT IV**
**VIOLATION OF MINNESOTA FAIR LABOR STANDARDS ACT**
**Minn. Stat. § 117.21, *et seq.***
**(Against All Defendants)**

98.    Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

99.    Minnesota law requires that any employee not exempt under the Minnesota Fair Labor Standards Act ("MFLSA") or paid on a piece rate basis be compensated on an hourly wage basis and paid a premium for any hours in excess of 48 worked in a workweek based upon the employee's "regular rate of pay" which may or may not be the employee's direct hourly wage.

100.    APP qualifies as an employer pursuant to Minn. Stat. § 177.23, subd. 6.

101.    Upon information and belief, Does 1–5 and Does 11–15 are defined as "employers" pursuant to Minn. Stat. §177.23, subd. 6 and are also liable for any unpaid compensation.

102.    Defendants failed to compensate Ms. Dunn on an hourly wage basis with a premium for hours worked in excess of 48 in a workweek.

103.    Ms. Dunn has suffered damages as a result of Defendants' violations of the MFLSA.

104.    Ms. Dunn is entitled to recover her attorney fees and costs incurred in remedying APP's violations of the MFLSA.

## COUNT V
## VIOLATION OF MINNESOTA PAYMENT OF WAGES ACT
### Minn. Stat. § 181.13
### (Against All Defendants)

105.    Minn. Stat. § 181.13(a) provides, in relevant part, as follows:

> Wages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

106.    Minn. Stat. § 181.13(a) further provides as follows:

> When any employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. Wages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

107.    The agreement pleaded in Count II constitutes a contract, and Ms. Dunn is entitled to the highest promised compensation.

108.    APP has failed to pay Ms. Dunn all of her earned wages despite receiving a written demand.

109.    Ms. Dunn has suffered damages as a result of APP's violation of the statute.

110.    Minn. Stat. § 181.171 authorizes a civil action for a violation of Minn. Stat. § 181.13.

111.    Ms. Dunn is entitled to recover her earned, unpaid wages as well as a penalty consisting of an amount equal to 15 days of her average daily earnings.

112.    Ms. Dunn is entitled to an award of attorney fees and costs with regard to the demand and recovery of unpaid wages.

### COUNT VI
### VIOLATION OF THE MINNESOTA WAGE THEFT PREVENTION ACT
### Minn. Stat. §§ 177.30, 181.032, 181.101
### (Against Defendant APP)

113.    The Minnesota Wage Theft Prevention Act was enacted to prevent exactly the type of conduct APP has engaged in. Specifically, Minnesota law requires that new employees receive detailed wage disclosure information, including information regarding wage payment, to be disclosed at the beginning of the employment relationship to help avoid wage and hour violations:

> (d) **At the start of employment**, an employer shall provide each employee a written notice containing the following information:
>
> (1) **the rate or rates of pay and basis thereof, including whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other method, and the specific application of any additional rates**;
> (2) allowances, if any, claimed pursuant to permitted meals and lodging;
> (3) paid vacation, sick time, or other paid time-off accruals and terms of use;
> (4) **the employee's employment status and whether the employee is exempt from minimum wage, overtime, and other provisions of chapter 177, and on what basis**;
> (5) **a list of deductions that may be made from the employee's pay**;
> (6) the number of days in the pay period, the regularly scheduled pay day, and the pay day on which the employee will receive the first payment of wages earned;
> (7) the legal name of the employer and the operating name of the employer if different from the legal name;
> (8) the physical address of the employer's main office or principal place of business, and a mailing address if different; and
> (9) the telephone number of the employer.
>
> (e) **The employer must keep a copy of the notice under paragraph (d) signed by each employee acknowledging receipt of the notice**. The notice must be provided to each employee in

English. The English version of the notice must include text provided by the commissioner that informs employees that they may request, by indicating on the form, the notice be provided in a particular language. If requested, the employer shall provide the notice in the language requested by the employee. The commissioner shall make available to employers the text to be included in the English version of the notice required by this section and assist employers with translation of the notice in the languages requested by their employees.

(f) An employer must provide the employee any written changes to the information contained in the notice under paragraph (d) prior to the date the changes take effect.

Minn. Stat. § 181.032(d)–(f) (emphasis added).

114.    APP never provided the required notice.

115.    Ms. Dunn requested that APP provide a copy of the notice signed by Ms. Dunn, and APP has not done so.

116.    APP also violated Minnesota law with respect to providing Ms. Dunn earning statements. Specifically, the following is required:

(a) At the end of each pay period, the employer shall provide each employee an earnings statement, either in writing or by electronic means, covering that pay period. An employer who chooses to provide an earnings statement by electronic means must provide employee access to an employer-owned computer during an employee's regular working hours to review and print earnings statements.

(b) The earnings statement may be in any form determined by the employer but must include:

(1) the name of the employee;

(2) **the rate or rates of pay and basis thereof, including whether the employee is paid by hour, shift, day, week, salary, piece, commission, or other method**;

(3) allowances, if any, claimed pursuant to permitted meals and lodging;

15

(4) **the total number of hours worked by the employee unless exempt from chapter 177;**

(5) the total amount of gross pay earned by the employee during that period;

(6) **a list of deductions made from the employee's pay**;

(7) the net amount of pay after all deductions are made;

(8) the date on which the pay period ends;

(9) the legal name of the employer and the operating name of the employer if different from the legal name;

(10)     the physical address of the employer's main office or principal place of business, and a mailing address if different; and

(11)     the telephone number of the employer.

Minn. Stat. § 181.032(a) (emphasis added).

117.   Ms. Dunn's earning statements do not comply with the law, failing at least in the areas noted above in boldface text.

118.   The Employment Agreement provides that APP will deduct from pay a portion of its MinnesotaCare Provider Tax from Ms. Dunn's wages.

119.   Ms. Dunn's earning statements do not indicate any deductions for that purpose, which means that deductions were taken without proper notice.

120.   Minnesota law further required APP to keep detailed records of Ms. Dunn's compensation:

(a)     Every employer subject to sections 177.21 to 177.44 must make and keep a record of: (1) the name, address, and occupation of each employee; (2) the rate of pay, and the amount paid each pay period to each employee; (3) the hours worked each day and each workweek by the employee, including for all employees paid at piece rate, the number of pieces completed at each piece rate; (4) a list of the personnel policies provided to the employee, including the date the policies were given to the employee and a brief description

16

of the policies; (5) a copy of the notice provided to each employee as required by section 181.032, paragraph (d), including any written changes to the notice under section 181.032, paragraph (f);

Minn. Stat. § 177.30.

121.   Upon information and belief, APP did not keep such records.

122.   APP has refused to provide Ms. Dunn with any such records.

123.   The Minnesota Wage Theft Prevention Act provides as follows:

(a) Except as provided in paragraph (b), every employer must pay all wages, including salary, earnings, and gratuities earned by an employee at least once every 31 days and all commissions earned by an employee at least once every three months, on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals. Unless paid earlier, the wages earned during the first half of the first 31-day pay period become due on the first regular payday following the first day of work. If wages or commissions earned are not paid, the commissioner of labor and industry or the commissioner's representative may serve a demand for payment on behalf of an employee. In addition to other remedies under section 177.27, if payment of wages is not made within ten days of service of the demand, the commissioner may charge and collect the wages earned at the employee's rate or rates of pay or at the rate or rates required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater, and a penalty in the amount of the employee's average daily earnings at the same rate or rates for each day beyond the ten-day limit following the demand. If payment of commissions is not made within ten days of service of the demand, the commissioner may charge and collect the commissions earned and a penalty equal to 1/15 of the commissions earned but unpaid for each day beyond the ten-day limit. Money collected by the commissioner must be paid to the employee concerned. This section does not prevent an employee from prosecuting a claim for wages. . . . For purposes of this section, wages are earned on the day an employee works. This section provides a substantive right for employees to the payment of wages, including salary, earnings, and gratuities, as well as commissions, in addition to the right to be paid at certain times.

Minn. Stat. § 181.101.

124.   APP failed to pay Ms. Dunn in accordance with this statute.

125.    Despite demand, APP has refused to pay Ms. Dunn pursuant to this statute. Ms. Dunn is entitled to a penalty for this failure pursuant to Minn. Stat. § 181.101.

126.    Ms. Dunn is entitled to an award of attorney fees and costs with regard to the demand and recovery of unpaid wages.

127.    Upon information and belief, Does 1–5 and Does 11–15 are joint employers of Ms. Dunn and are also liable for failing to properly pay Ms. Dunn

128.    Upon information and belief, Does 6–10 are owners of APP and are also liable for APP's failure to pay Ms. Dunn properly.

## COUNT VII
## UNJUST ENRICHMENT
### (Against All Defendants)

129.    Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

130.    Ms. Dunn pleads this Count in the alternative to Counts II and III.

131.    Ms. Dunn performed labor for APP and to the benefit of all Defendants, but Ms. Dunn has not been fully paid for her labor.

132.    All Defendants have been unjustly enriched through their interests in APP's profits by retaining wages earned by Ms. Dunn.

133.    Injustice would result if Defendants were allowed to retain this benefit.

134.    Accordingly, Defendants should be required to pay to Ms. Dunn the wages she has earned.

## COUNT VIII
## QUANTUM MERUIT
### (Against All Defendants)

135.    Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

136.     Ms. Dunn pleads this Count in the alternative to Counts II and III.

137.     Ms. Dunn performed labor for APP and to the benefit of all Defendants, but Ms. Dunn has not been fully paid for her labor.

138.     The reasonable value of the labor Ms. Dunn provided greatly exceeded the compensation she received.

139.     As detailed more fully above, at times, Ms. Dunn received no payment for her labor.

140.     Ms. Dunn reasonably expected to be paid for the reasonable value of her labor.

141.     Injustice would result if Defendants are not required to compensate Ms. Dunn for the reasonable value of her labor.

142.     Accordingly, Defendants should be required to pay to Ms. Dunn the wages she has earned.

**COUNT IX**
**WRONGFUL TERMINATION/WHISTLEBLOWER VIOLATION**
**Minn. Stat. § 181.932**
**(Against All Defendants)**

143.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

144.     The Minnesota Whistleblower Act provides:

Prohibited action. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;

(2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;

(3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason;

(4) the employee, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm;

. . .

Minn. Stat. § 181.932, subd. 1.

145.   Ms. Dunn made good faith reports that she believed she was given incomplete information regarding billing codes and demanded additional information.

146.   Ms. Dunn made expressed good faith concerns that her compensation was not being properly calculated.

147.   Shortly after Ms. Dunn's report, APP terminated Ms. Dunn's employment.

148.   APP's termination of Ms. Dunn's employment was motivated at least in part by her complaints of improper billing and failure to account for and pay her compensation.

149.   Ms. Dunn has suffered damages as a result of APP's retaliatory termination, including past and future lost wages and benefits and the costs of bringing this action.

## COUNT X
## FAILURE TO PROVIDE PERSONNEL RECORDS
### Minn. Stat. § 181.961
### (Against APP)

150.   Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

151.   Ms. Dunn demanded that APP provide her a copy of her personnel records.

152.    More than seven working days have elapsed since Ms. Dunn's request, and APP has provided no personnel records.

153.    Ms. Dunn incurred damages including attorney fees as a result of APP's refusal to provide copies of Ms. Dunn's personnel records.

### COUNT XI
### VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT ("FLSA")
#### (All Defendants)

154.    Ms. Dunn incorporates the allegations in the preceding paragraphs as if the same were fully set forth herein.

155.    The FLSA requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207.

156.    Defendants are an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

157.    Upon information and belief, Does 1–5 and Does 11–15 are joint employers of Ms. Dunn and are also liable for failing to properly pay Ms. Dunn

158.    Upon information and belief, Does 6–10 are owners of APP and are also liable for APP's failure to pay Ms. Dunn properly.

159.    Ms. Dunn is a non-exempt covered employee under 29 U.S.C. § 203(e)(1).

160.    Ms. Dunn has worked more than forty hours per week for Defendants during the applicable time period.

161.    Defendants have not properly compensated Ms. Dunn for their overtime hours as required by the FLSA.

162.    Defendants failed to make a good-faith effort to comply with the FLSA as it relates to the compensation of Ms. Dunn.

163.    Defendants knew Ms. Dunn worked overtime without proper compensation, and they willfully failed and refused to pay Ms. Dunn wages at the required overtime rates. *See* 29 U.S.C. § 255.

164.    Defendants' willful failure and refusal to pay Ms. Dunn overtime wages for time worked violates the FLSA. 29 U.S.C. § 207.

165.    Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA, 29 U.S.C. § 255(a).

166.    Ms. Dunn has been damaged by Defendants' willful violations of the FLSA and has suffered a loss of income and other damages.

167.    Ms. Dunn is entitled to liquidated damages and attorney fees and costs incurred as a result of this claim.

## COUNT XII
## FAILURE TO TIMELY PAY WAGES
### Minn. Stat. § 181.101
### (Defendant APP)

168.    Ms. Dunn incorporates the allegations in the preceding paragraphs as if the same were fully set forth herein.

169.    During the course of Ms. Dunn's employment, Defendant APP regularly failed to pay Ms. Dunn within 31 days of the date the wages were owned.

170.    More than 10 days have passed since Ms. Dunn has demanded her earned but unpaid wages.

171.    Ms. Dunn has been damaged by Defendant's APP failure to timely pay her earned

wages.

Ms. Dunn is entitled to damages in the amount of her unpaid wages, as well as applicable
statutory penalties for Defendant APP's failure to timely pay wages, as well as attorney fees and
costs incurred as a result of this claim. **COUNT XIII**
**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**
**Minn. Stat. 363A.01, et seq.**
**(All Defendants)**

172.    Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if

the same were fully set forth herein.

173.    Ms. Dunn was and is qualified to work in his position with APP.

174.    Ms. Dunn informed APP that she had been recently diagnosed with ADHD.

175.    APP regarded Ms. Dunn as a person with a disability.

176.    APP terminated Ms. Dunn at least in part as a result of its regarding her as a person

with a disability.

177.    APP's proffered reasons for terminating Ms. Dunn's employment is not worthy of

credence because, despite claiming to have documentation of its alleged bases, it did not provide

those as part of Ms. Dunn's personnel records and may not rely upon them—if they exist—

pursuant to Minn. Stat. 181.963.

178.    Accordingly, Ms. Dunn has been damaged on the basis of the actions taken by APP

to discriminate against her employment on the basis of disability.

As a direct and proximate result of the violation, Ms. Dunn has sustained damages in

excess of $50,000 as well as interest, costs, disbursements, and incidental and consequential

losses.

## REQUEST FOR RELIEF

Plaintiff, Sheila Dunn, requests that the Court:

Filed in District Court
State of Minnesota
3/4/2022 2:25 PM

1.     Enter judgment in her favor and against Defendants for each of the claims asserted in this Complaint;

2.     Order a speedy hearing on Plaintiff's claim for declaratory judgment in accordance with Minnesota Rule of Civil Procedure 57;

3.     Declare the noncompete/nonsolicit restrictive covenants contained in the Employment Agreement to be unenforceable;

4.     Enjoin Defendants and anyone acting on their behalf from attempting to enforce the noncompete/non-solicit restrictive covenants contained in the Employment Agreement or threatening Plaintiff or any third party with any enforcement action;

5.     Enter judgment in favor of Ms. Dunn and against APP and Does 1–20 jointly and severally in an amount greater than $50,000, to include compensatory damages, to include front and back pay;

6.     Award Ms. Dunn liquidated damages for unpaid wages;

7.     Award Ms. Dunn the full statutory penalties for failure to timely pay wages;

8.     Award Ms. Dunn her legal expenses, including attorney fees, costs, and disbursements; and

9.    Award all other relief the court deems just and equitable.

Dated:  March 4, 2022                          **GODWIN DOLD**

*/s/ James A. Godwin*
James A. Godwin, #392020
Rick A. Dold, #394847
Chris K. White, #396840
300 1st Ave. NW, Suite 306
Rochester, MN  55901
Telephone: 507-218-8383
james@godwindold.com
rick@godwindold.com
chris@godwindold.com

**ATTORNEYS FOR PLAINTIFF**

**ACKNOWLEDGEMENT**

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subd. 1, to the party or parties against whom the allegations in this pleading are asserted.

*/s/ James A. Godwin*
James A. Godwin, #392020

# Exhibit A-2

**STATE OF MINNESOTA**          **DISTRICT COURT – CIVIL DIVISION**
**COUNTY OF WINONA**                **THIRD JUDICIAL DISTRICT**

| | |
|---|---|
| Sheila M. Dunn, | Case Type: Employment |
| Plaintiff, | Case No. 85-CV-21- |
| v. | **SUMMONS** |
| Associates in Psychiatry and Psychology, P.A. and Does 1–20, | |
| Defendants. | |

THIS SUMMONS IS DIRECTED TO DEFENDANTS ASSOCIATES IN PSYCHIATRY AND PSYCHOLOGY, P.A., 3103 SUPERIOR DR. NW, ROCHESTER, MN 55901 AND DOES 1–20.

1.     **YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you. The Complaint is attached to this Summons. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this Summons.

2.     **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this Summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at Godwin Dold, 300 1st Ave. NW, Suite 306, Rochester, MN  55901.

3.     **YOU MUST RESPOND TO EACH CLAIM.**  The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you think the Plaintiff should not be given everything they asked for in the Complaint, you must say that in your Answer.

4.     **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE PERSON WHO SIGNED THIS SUMMONS.**  If you do not serve a written Answer within 21 days, you will lose this case by default. You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their Complaint. If you agree with the claims stated in the Complaint, you don't need to respond. A default judgment can then be entered against you for what the Plaintiff asked for in the Complaint.

5. **LEGAL ASSISTANCE.**  You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help, visit www.mncourts.gov/selfhelp and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county, or Court Administration may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still serve a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION (ADR).**  The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written Answer, even if you expect to use ADR.

Dated:  September 15, 2021

**GODWIN DOLD**

*/s/ James A. Godwin*
James A. Godwin, #392020
Rick A. Dold, #394847
Chris K. White, #396840
300 1st Ave. NW, Suite 306
Rochester, MN  55901
Telephone: 507-218-8383
james@godwindold.com
rick@godwindold.com
chris@godwindold.com

**ATTORNEYS FOR PLAINTIFF**

2

# Exhibit A-3

**STATE OF MINNESOTA**                    **DISTRICT COURT – CIVIL DIVISION**
**COUNTY OF WINONA**                          **THIRD JUDICIAL DISTRICT**

---

Sheila M. Dunn,                                    Case Type: Employment

          Plaintiff,                          Case No. 85-CV-21-

v.                                                          **COMPLAINT**

Associates in Psychiatry and Psychology,
P.A. and Does 1–20,

          Defendants.

---

Plaintiff, Sheila M. Dunn, states and alleges as follows:

## <u>THE PARTIES</u>

1.      Ms. Dunn is a natural person who resides in Winona County, Minnesota.

2.      Defendant Associates in Psychiatry and Psychology, P.A. ("APP") is a Minnesota limited liability company with its primary place of business in Rochester, Minnesota and that provides service throughout the State of Minnesota.

3.      Upon information and belief, Defendants Does 1–5 are individuals of unknown residence.

4.      Upon information and belief, Defendants Does 6–10 are individuals of unknown residence.

5.      Upon information and belief, Defendants Does 11–15 are entities of unknown corporate form and residence.

6.      Upon information and belief, Defendants Does 16–20 are entities of unknown corporate form and residence

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter because the actions and omissions giving rise to the action occurred primarily in the State of Minnesota.

8.     Winona County is the proper venue for this matter because Ms. Dunn resides in Winona County and at all times while providing telemedicine services described in this Complaint did so from her home in Winona County.

## FACTUAL BACKGROUND

9.     This case arises from Ms. Dunn's employment with APP, which began in or around May of 2020.

10.    Ms. Dunn is a registered nurse and certified nurse practitioner who served in that role at APP in her first position following earning her nurse practitioner certification.

11.    In April of 2020, APP offered employment to Ms. Dunn, and she accepted.

**The Written Employment Agreement**

12.    Later, to memorialize the employment relationship, APP forwarded to Ms. Dunn a written contract of employment (the "Employment Agreement"), a copy of which is attached as Exhibit 1.

13.    The Employment Agreement was at least partially incomplete, omitting various numbered paragraphs and failing to include information required by Minn. Stat. § 181.55.

14.    While the Employment Agreement acknowledged Ms. Dunn's status as an employee, it purported to compensate her based upon an illegal profit-sharing scheme.

15.    Specifically, the Employment Agreement provides as follows:

> **Compensation.**   The parties agree that, as for compensation employee will be paid sixty percent (60%) of collected receivables, which shall be understood to be those payments already collected and listed as 'payments' on the Monthly Provider Summary Report prepared by Employer's billing department and approved by

2

Employer on the revenue that Employee personally generates for APP per month for each specific month, less all applicable local, state and federal withholdings, or other deductions employee wishes to take (examples: set asides for health savings account, medical or retirement savings accounts). Employee agrees that payment shall be made by Employer to Employee (or directly deposited by Employer to Employee's personal bank account), every other Friday based on the prior period's receipts and Employee shall sign all appropriate forms in a timely manner to facilitate payment. Should there be a holiday on one of these dates, paychecks will be deposited the following business day. Employee further understands that all case notes must be completed in order to bill for the session.

Employment Agreement, p. 2, ¶ 1.

16.     Upon information and belief, APP used the same or similar illegal language in its contracts with other employees.

17.     APP failed to provide the beginning-of-employment notices required by Minn. Stat. § 181.032(d).

18.     Throughout Ms. Dunn's employment, APP failed to provide accurate and complete earning statements as required by Minn. Stat. § 181.032 and the contract itself.

19.     Ms. Dunn regularly worked without pay on days when she was supposed to be relieved of duty for time off or to attend training.

20.     During these times she answered questions from patients and coworkers, often to the extent that she was unable to complete training exercises.

21.     Ms. Dunn made multiple requests for APP to provide her with Current Procedural Terminology ("CPT") codes and policies so that Ms. Dunn could bill patients properly.

22.     APP refused to provide all relevant CPT codes and policies.

23.     In June 2021, Ms. Dunn reported to APP that patients may be improperly billed because she was unsure of what needed to be included in notes to meet billing requirements for billing the codes APP required her to use.

24.     A short time after Ms. Dunn's report, APP summarily terminated Ms. Dunn's employment.

25.     APP has refused—and continues to refuse—to provide calculations showing the basis for and calculations of her compensation.

26.     APP has claimed to have "reason to believe" Ms. Dunn violated certain restrictive covenants but has failed to provide any evidence of those allegations.

27.     Upon information and belief, Defendants did not keep records of hours Ms. Dunn worked.

28.     APP paid Ms. Dunn less than the mandatory minimum wage for, at a minimum, the first and last months of Ms. Dunn's employment.

29.     APP has made vague legal threats to Ms. Dunn and the group with which she plans to provide care as an independent contractor.

30.     Multiple patients have informed Ms. Dunn that they need prescription refills, but they are not able to get them because APP refuses to authorize refills unless those patients come in for an appointment that is not available until after they run out of medication.

31.     APP has blamed Ms. Dunn for patient confusion although APP failed to comply with its contractual obligation to provide patients with a letter informing them of Ms. Dunn's departure, and for weeks after her departure her name, biography, and image were still on APP's website.

**Contractual Language**

32.     The alleged restrictive covenants in the Employment Agreement are stated in several contradictory ways.

33.     However, APP relies upon a provision without any geographic or practice scope limitations:

> Employee further agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, Employee shall not, for any reason, without written consent by Employer, either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient . . . .

Employment Agreement, p. 5, ¶ 9.

34.     APP relies upon this provision in its cease and desist letter to Ms. Dunn.

35.     Two other provisions purport to apply to Ms. Dunn if her employment is involuntarily terminated, but the provision APP seeks to enforce does not apply in that circumstance.

36.     The contract provides as follows:

> Employee further understands that Employer shall write an official letter to patients informing them of the Employees [sic] separation from the group and that the Employee will have the opportunity to co-sign the letter.

Employment Agreement, p. 6, ¶ 10.

37.     Not only did APP not comply with this provision, but its agents also attacked and blamed Ms. Dunn for the resulting patient confusion.

38.     Instead of complying with the terms of the Employment Agreement, APP forced Ms. Dunn to expend many hours of unpaid work informing patients individually of her departure.

39.     Ms. Dunn offered APP the opportunity to provide evidence that it complied with the Employment Agreement, and APP again declined.

40.     APP appears to be concerned that Ms. Dunn has responded to patient inquiries regarding where she now plans to practice, but APP had declined to clarify what evidence it has of any conduct even potentially violative of the Employment Agreement.

5

41.     Ms. Dunn invited APP to provide any legal authority that responding to patient inquiries could ever constitute improper competition or solicitation, even assuming an enforceable noncompete, and APP has not provided any.

**Personnel Records**

42.     Ms. Dunn has demanded a copy of her personnel records in accordance with Minnesota law.

43.     To date, Ms. Dunn's personnel records have not been provided to her.

**Demand for Payment of Wages**

44.     Ms. Dunn has demanded in writing payment of all earned unpaid wages.

45.     To date, APP has refused to provide Ms. Dunn a calculation of her wages or any payment of those wages yet unpaid.

**Underpayment**

46.     Even based upon APP's illegal proposed compensation model, APP underpaid Ms. Dunn.

47.     For example, her commissions in the first quarter of 2021 appear to her to be significantly less than would be required, given her treatment of patients in the final quarter of 2020.

48.     Despite Ms. Dunn's request, APP has not provided the financial records showing the computation of Ms. Dunn's compensation.

49.     At a minimum, Ms. Dunn worked for the first two months of her employment with no compensation.

50.     In addition, APP has not paid Ms. Dunn for the last month of her work.

51.     Notably, this period of time included many hours of "transition" work that could not have been compensated by fee sharing even if APP had properly compensated her with fee sharing.

52.     The Employment Agreement indicates that Ms. Dunn would not be paid for much of her work performed over three full months because she did not give notice of her termination and APP had not yet been paid by patients or third-party payors:

> Employee shall continue to receive payments on receivables for ninety (90) days following the Employee's last date of employment on the following conditions: a) Employee has timely submitted the charge slips as described in paragraph #3 above; and b) Employee has given Employer ninety (90) days' notice. **Should the conditions of a through herein [sic] not be complied with, Employee acknowledges and agrees that she shall be paid only up to and including Employee's last day of employment, and only for prior billed and/or collected receipts as described in paragraph #3 above.** Employee agrees that any receivables still outstanding for services after last day of employment and past the 90-day period shall go towards Employer's recouping costs associated with advertising and hiring a new Employee.

Employment Agreement, p. 6, ¶ 10 (emphasis added).

53.     This provision conditions payment upon the application of "paragraph #3," which does not exist, and then only allows for payment of "billed and/or collected receipts[.]"

54.     Because APP has not provided any additional compensation or documentation regarding Ms. Dunn's compensation, presumably it believes this provision overrides Minnesota law.

55.     While it has not said so expressly, APP apparently relies upon this provision for its refusal to compensate Ms. Dunn for work performed toward the end of her employment.

**Wrongful Termination/Whistleblower Violation**

56.     Ms. Dunn demanded information regarding her billing and wages and was only once provided any such information.

Filed in District Court
State of Minnesota
9/16/2021 9:14 PM

57.     Ms. Dunn made this demand in January of 2021 and was provided with incomplete information.

58.     In June of 2021 Ms. Dunn complained that she needed additional information regarding how to code her billing properly.

59.     APP refused to provide the information, claiming Ms. Dunn had already been provided with the information.

60.     APP did not explain why, even if that were true, Ms. Dunn would not be allowed to review a second copy of the information she needed to accurately bill patients.

61.     Shortly thereafter, APP terminated Ms. Dunn's employment.

62.     APP then interfered with Ms. Dunn's right to treat any patients.

63.     Upon information and belief, Defendants Does 1-5 were also employers of Ms. Dunn or were joint employers of Ms. Dunn.

64.     Upon information and belief, Defendants Does 6-10 are APP's owners, agents or otherwise liable for the acts and omissions alleged in this Complaint.

65.     Upon information and belief, Defendants Does 11-15 were also employers of Ms. Dunn or were joint employers of Ms. Dunn.

66.     Upon information and belief, Defendants Does 16-20 are APP's owners, agents or otherwise liable for the acts and omissions alleged in this Complaint.

## CLAIMS

### COUNT I
### DECLARATORY RELIEF
### Uniform Declaratory Judgments Act
### Minn. Stat. § 555.01, *et seq.*
### (Against Defendant APP)

67.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

68.     As described in detail above, a present and judiciable controversy has arisen between the parties with regard to the Employment Agreement.

69.     APP has contended that various alleged restrictive covenants are binding and enforceable and prevent Ms. Dunn from seeing any patients.

70.     Specifically, through its counsel, APP wrote to Ms. Dunn on August 11, 2021 contending that the Employment Agreement "provides that during your employment with APP and for six months thereafter you 'shall not, for any reason without written consent by [APP], either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient . . . .'"

71.     APP's counsel further threatened "APP has authorized us to take any and all measures, including legal action, to protect it from further harm and to compensate it for any damages[]" and threatened "the imminent potential for litigation . . . ."

72.     The alleged restrictive covenants are not enforceable against Ms. Dunn for several reasons, including lack of consideration, failure of consideration, material breach, unclean hands, illegality, overbreadth, and ambiguity.

73.     Nurse practitioners are not exempt employees for wage payment purposes unless they satisfy both the primary duties and the salary basis test.

74.     Because an agreement to pay an employee solely on a revenue basis is illegal, any reciprocal obligations on the part of the employee are also illegal and unenforceable.

75.     Ms. Dunn requests a declaration from this Court that the purported restrictive covenants are not enforceable.

## COUNT II
## BREACH OF CONTRACT
### (Against Defendant APP)

76.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

77.     The Employment Agreement exists between Ms. Dunn and APP as enforceable against APP because, to the extent the Employment Agreement provides for greater rights or compensation than would otherwise be legally required, such standards are incorporated into the legal compensation to be paid by statute and such contractual provisions are severable from the illegal or unenforceable provisions of the Employment Agreement pursuant to ¶ 17 of the Employment Agreement.

78.     The illegality of the compensation provision does not save an employer from paying the agreed-upon higher compensation if it is higher than would otherwise be provided by law.

79.     APP's actions and omissions, as more fully described above, breached the Employment Agreement including, without limitation, failure to pay Ms. Dunn's wages at the agreed upon rate and failure to properly advise patients of the end to Ms. Dunn's employment.

80.     All conditions precedent to APP's performance under the contact have been met.

81.     Ms. Dunn has suffered damages as a result of the breach of contract.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendant APP)

82.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

83.     Each contract in the State of Minnesota includes an implied covenant to act in good faith and deal fairly with other parties to the contract.

84.     APP's actions, as more fully detailed above, breached its duty to perform under the contract addressed in Count II and to deal fairly with Ms. Dunn, including its refusal to notify patients of Ms. Dunn's departure, as required by the contract, then faulting her for the resulting patient confusion.

85.     Upon information and belief, APP intentionally miscalculated Ms. Dunn's compensation.

86.     APP failed—and continues to fail—to provide any support for its calculations of Ms. Dunn's compensation.

87.     Ms. Dunn has suffered damages as a result of those breaches, including earned but unpaid compensation.

## COUNT IV
## VIOLATION OF MINNESOTA FAIR LABOR STANDARDS ACT
### Minn. Stat. § 117.21, *et seq.*
### (Against All Defendants)

88.     Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

89.     Minnesota law requires that any employee not exempt under the Minnesota Fair Labor Standards Act ("MFLSA") or paid on a piece rate basis be compensated on an hourly wage

basis and paid a premium for any hours in excess of 48 worked in a workweek based upon the employee's "regular rate of pay" which may or may not be the employee's direct hourly wage.

90.     APP qualifies as an employer pursuant to Minn. Stat. § 177.23, subd. 6.

91.     Upon information and belief, Does 1-5 and Does 11-15 are defined as "employers" pursuant to Minn. Stat. §177.23, subd. 6 and are also liable for any unpaid compensation.

92.     Defendants failed to compensate Ms. Dunn on an hourly wage basis with a premium for hours worked in excess of 48 in a workweek.

93.     Ms. Dunn has suffered damages as a result of Defendants' violations of the MFLSA.

94.     Ms. Dunn is entitled to recover her attorney fees and costs incurred in remedying APP's violations of the MFLSA.

## COUNT V
## VIOLATION OF MINNESOTA PAYMENT OF WAGES ACT
## Minn. Stat. § 181.13
## (Against All Defendants)

95.     Minn. Stat. § 181.13(a) provides, in relevant part, as follows:

> Wages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

96.     Minn. Stat. § 181.13(a) further provides as follows:

> When any employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. Wages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

97.     The agreement pleaded in Count II constitutes a contract, and Ms. Dunn is entitled to the highest promised compensation.

98.     APP has failed to pay Ms. Dunn all of her earned wages despite receiving a written demand.

99.     Ms. Dunn has suffered damages as a result of APP's violation of the statute.

100.    Minn. Stat. § 181.171 authorizes a civil action for a violation of Minn. Stat. § 181.13.

101.    Ms. Dunn is entitled to recover her earned, unpaid wages as well as a penalty consisting of an amount equal to 15 days of her average daily earnings.

102.    Ms. Dunn is entitled to an award of attorney fees and costs with regard to the demand and recovery of unpaid wages.

## COUNT VI
## VIOLATION OF THE MINNESOTA WAGE THEFT PREVENTION ACT
### Minn. Stat. §§ 177.30, 181.032, 181.101
### (Against Defendant APP)

103.    The Minnesota Wage Theft Prevention Act was enacted to prevent exactly the type of conduct APP has engaged in. Specifically, Minnesota law requires that new employees receive detailed wage disclosure information, including information regarding wage payment, to be disclosed at the beginning of the employment relationship to help avoid wage and hour violations:

> (d) **At the start of employment**, an employer shall provide each employee a written notice containing the following information:
>
> (1) **the rate or rates of pay and basis thereof, including whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other method, and the specific application of any additional rates**;
> (2) allowances, if any, claimed pursuant to permitted meals and lodging;
> (3) paid vacation, sick time, or other paid time-off accruals and terms of use;

13

Filed in District Court
State of Minnesota
9/16/2021 9:14 PM

(4) **the employee's employment status and whether the employee is exempt from minimum wage, overtime, and other provisions of chapter 177, and on what basis**;

(5) **a list of deductions that may be made from the employee's pay**;

(6) the number of days in the pay period, the regularly scheduled pay day, and the pay day on which the employee will receive the first payment of wages earned;

(7) the legal name of the employer and the operating name of the employer if different from the legal name;

(8) the physical address of the employer's main office or principal place of business, and a mailing address if different; and

(9) the telephone number of the employer.

(e) **The employer must keep a copy of the notice under paragraph (d) signed by each employee acknowledging receipt of the notice**. The notice must be provided to each employee in English. The English version of the notice must include text provided by the commissioner that informs employees that they may request, by indicating on the form, the notice be provided in a particular language. If requested, the employer shall provide the notice in the language requested by the employee. The commissioner shall make available to employers the text to be included in the English version of the notice required by this section and assist employers with translation of the notice in the languages requested by their employees.

(f) An employer must provide the employee any written changes to the information contained in the notice under paragraph (d) prior to the date the changes take effect.

Minn. Stat. § 181.032(d)–(f) (emphasis added).

104.    APP never provided the required notice.

105.    Ms. Dunn requested that APP provide a copy of the notice signed by Ms. Dunn, and APP has not done so.

106.    APP also violated Minnesota law with respect to providing Ms. Dunn earning statements. Specifically, the following is required:

(a) At the end of each pay period, the employer shall provide each employee an earnings statement, either in writing or by electronic means, covering that pay period. An employer who chooses to provide an earnings statement by electronic means must provide employee access to an employer-owned computer during an employee's regular working hours to review and print earnings statements.

(b) The earnings statement may be in any form determined by the employer but must include:

(1) the name of the employee;

(2) **the rate or rates of pay and basis thereof, including whether the employee is paid by hour, shift, day, week, salary, piece, commission, or other method**;

(3) allowances, if any, claimed pursuant to permitted meals and lodging;

(4) **the total number of hours worked by the employee unless exempt from chapter 177**;

(5) the total amount of gross pay earned by the employee during that period;

(6) **a list of deductions made from the employee's pay**;

(7) the net amount of pay after all deductions are made;

(8) the date on which the pay period ends;

(9) the legal name of the employer and the operating name of the employer if different from the legal name;

(10) the physical address of the employer's main office or principal place of business, and a mailing address if different; and

(11) the telephone number of the employer.

Minn. Stat. § 181.032(a) (emphasis added).

107. Ms. Dunn's earning statements do not comply with the law, failing at least in the areas noted above in boldface text.

108.    The Employment Agreement provides that APP will deduct from pay a portion of its MinnesotaCare Provider Tax from Ms. Dunn's wages.

109.    Ms. Dunn's earning statements do not indicate any deductions for that purpose, which means that deductions were taken without proper notice.

110.    Minnesota law further required APP to keep detailed records of Ms. Dunn's compensation:

> (a)    Every employer subject to sections 177.21 to 177.44 must make and keep a record of: (1) the name, address, and occupation of each employee; (2) the rate of pay, and the amount paid each pay period to each employee; (3) the hours worked each day and each workweek by the employee, including for all employees paid at piece rate, the number of pieces completed at each piece rate; (4) a list of the personnel policies provided to the employee, including the date the policies were given to the employee and a brief description of the policies; (5) a copy of the notice provided to each employee as required by section 181.032, paragraph (d), including any written changes to the notice under section 181.032, paragraph (f);

Minn. Stat. § 177.30.

111.    Upon information and belief, APP did not keep such records.

112.    APP has refused to provide Ms. Dunn with any such records.

113.    The Minnesota Wage Theft Prevention Act provides as follows:

> (a) Except as provided in paragraph (b), every employer must pay all wages, including salary, earnings, and gratuities earned by an employee at least once every 31 days and all commissions earned by an employee at least once every three months, on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals. Unless paid earlier, the wages earned during the first half of the first 31-day pay period become due on the first regular payday following the first day of work. If wages or commissions earned are not paid, the commissioner of labor and industry or the commissioner's representative may serve a demand for payment on behalf of an employee. In addition to other remedies under section 177.27, if payment of wages is not made within ten days of service of the demand, the commissioner may charge and collect the wages earned at the employee's rate or rates of pay or at the rate or rates required

by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater, and a penalty in the amount of the employee's average daily earnings at the same rate or rates for each day beyond the ten-day limit following the demand. If payment of commissions is not made within ten days of service of the demand, the commissioner may charge and collect the commissions earned and a penalty equal to 1/15 of the commissions earned but unpaid for each day beyond the ten-day limit. Money collected by the commissioner must be paid to the employee concerned. This section does not prevent an employee from prosecuting a claim for wages. . . . For purposes of this section, wages are earned on the day an employee works. This section provides a substantive right for employees to the payment of wages, including salary, earnings, and gratuities, as well as commissions, in addition to the right to be paid at certain times.

Minn. Stat. § 181.101.

114.  APP failed to pay Ms. Dunn in accordance with this statute.

115.  Despite demand, APP has refused to pay Ms. Dunn pursuant to this statute.

Ms. Dunn is entitled to a penalty for this failure pursuant to Minn. Stat. § 181.101.

116.  Ms. Dunn is entitled to an award of attorney fees and costs with regard to the demand and recovery of unpaid wages.

117.  Upon information and belief, Does 1-5 and Does 11-15 are joint employers of Ms. Dunn and are also liable for failing to properly pay Ms. Dunn

118.  Upon information and belief, Does 6-10 are owners of APP and are also liable for APP's failure to pay Ms. Dunn properly.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

119.  Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

120.  Ms. Dunn pleads this Count in the alternative to Counts II and III.

121.    Ms. Dunn performed labor for APP and to the benefit of all Defendants, but Ms. Dunn has not been fully paid for her labor.

122.    All Defendants have been unjustly enriched through their interests in APP's profits by retaining wages earned by Ms. Dunn.

123.    Injustice would result if Defendants were allowed to retain this benefit.

124.    Accordingly, Defendants should be required to pay to Ms. Dunn the wages she has earned.

## COUNT VIII
## QUANTUM MERUIT
### (Against All Defendants)

125.    Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

126.    Ms. Dunn pleads this Count in the alternative to Counts II and III.

127.    Ms. Dunn performed labor for APP and to the benefit of all Defendants, but Ms. Dunn has not been fully paid for her labor.

128.    The reasonable value of the labor Ms. Dunn provided greatly exceeded the compensation she received.

129.    As detailed more fully above, at times, Ms. Dunn received no payment for her labor.

130.    Ms. Dunn reasonably expected to be paid for the reasonable value of her labor.

131.    Injustice would result if Defendants are not required to compensate Ms. Dunn for the reasonable value of her labor.

132.    Accordingly, Defendants should be required to pay to Ms. Dunn the wages she has earned.

## COUNT IX
## WRONGFUL TERMINATION/WHISTLEBLOWER VIOLATION
### Minn. Stat. § 181.932
### (Against All Defendants)

133.   Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

134.   The Minnesota Whistleblower Act provides:

Prohibited action. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;

(2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;

(3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason;

(4) the employee, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm;

. . .

Minn. Stat. § 181.932, subd. 1.

135.   Ms. Dunn made good faith reports that she believed she was given incomplete information regarding billing codes and demanded additional information.

136.    Ms. Dunn made expressed good faith concerns that her compensation was not being properly calculated.

137.    Shortly after Ms. Dunn's report, APP terminated Ms. Dunn's employment.

138.    APP's termination of Ms. Dunn's employment was motivated at least in part by her complaints of improper billing and failure to account for and pay her compensation.

139.    Ms. Dunn has suffered damages as a result of APP's retaliatory termination, including past and future lost wages and benefits and the costs of bringing this action.

**COUNT X**
**Failure to Provide Personnel Records**
**Minn. Stat. § 181.961**
**(Against APP)**

140.    Ms. Dunn incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

141.    Ms. Dunn demanded that APP provide her a copy of her personnel records.

142.    More than seven working days have elapsed since Ms. Dunn's request, and APP has provided no personnel records.

143.    Ms. Dunn incurred damages including attorney fees as a result of APP's refusal to provide copies of Ms. Dunn's personnel records.

**<u>REQUEST FOR RELIEF</u>**

Plaintiff, Sheila Dunn, requests that the Court:

1.    Enter judgment in her favor and against Defendants for each of the claims asserted in this Complaint;

2.    Order a speedy hearing on Plaintiff's claim for declaratory judgment in accordance with Minnesota Rule of Civil Procedure 57;

3.      Declare the noncompete/nonsolicit restrictive covenants contained in the Employment Agreement to be unenforceable;

4.      Enjoin Defendants and anyone acting on their behalf from attempting to enforce the noncompete/non-solicit restrictive covenants contained in the Employment Agreement or threatening Plaintiff or any third party with any enforcement action;

5.      Enter judgment in favor of Ms. Dunn and against APP and Does 1-20 jointly and severally in an amount greater than $50,000, to include compensatory damages, to include front and back pay;

6.      Award Ms. Dunn liquidated damages for unpaid wages;

7.      Award Ms. Dunn the full statutory penalties for failure to timely pay wages;

8.      Award Ms. Dunn her legal expenses, including attorney fees, costs, and disbursements; and

9.      Award all other relief the court deems just and equitable.


Dated:  September 15, 2021                    **GODWIN DOLD**

                                             */s/ James A. Godwin*
                                             James A. Godwin, #392020
                                             Rick A. Dold, #394847
                                             Chris K. White, #396840
                                             300 1st Ave. NW, Suite 306
                                             Rochester, MN  55901
                                             Telephone: 507-218-8383
                                             james@godwindold.com
                                             rick@godwindold.com
                                             chris@godwindold.com

                                             **ATTORNEYS FOR PLAINTIFF**

Filed in District Court
State of Minnesota
9/16/2021 9:14 PM

## ACKNOWLEDGEMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subd. 1, to the party or parties against whom the allegations in this pleading are asserted.

/s/ James A. Godwin
James A. Godwin, #392020

1

## ASSOCIATES IN PSYCHIATRY AND PSYCHOLOGY, P. A.

### EMPLOYMENT AGREEMENT

This Agreement is made and entered into by and between Associates in Psychiatry and Psychology, P.A. (hereinafter referred to as "Employer") and <u>Sheila Dunn</u>    (hereinafter referred to as "Employee").

### I. RECITALS

A.  Employee is an appropriately qualified professional and has completed all updates to maintain licensing and education and to practice at the highest ethical, clinical and other relevant standards; and Employee has represented all her qualifications and background factors in a truthful and accurate manner to Employer.

B.  Employer is a well-established Professional Association providing various mental health services for patients and organizations in Faribault, Rochester and Southeastern Minnesota.

C.  Employer and Employee wish to enter into an 'at will' employment arrangement and this Agreement provides the purpose, terms and conditions under which the parties will conduct their employment relationship.

### II. AGREEMENT

In consideration of the recitals stated above and the mutual promises made below, the parties agree as follows:

1.  **Term of Employment.** Employee specifically acknowledges, understands and agrees that the employment addressed in this contract is "employment at will", and means that Employee has not been hired for any definite period of employment, and that either Employer or Employee may terminate their employment relationship at any time, for any reason, with or without cause, notice or prior discipline. Employee further understands and specifically acknowledges and agrees that no offers, promises, guarantees or representations of employment or of its terms or conditions or duration have been made to Employee other than what is written here, and that Employer makes no such offers, promises, guarantees or representations to Employee other than what is written here; further, that at no time shall Employer and Employee's relationship be construed to afford Employee any rights other than what is specifically addressed in this contract. Employee shall commence working for Employer as a practitioner _____ , 2020.

    **Description of Employment.** Employee is employed for the purpose of providing psychiatric services for patients in line with the expectations set forth in this agreement. In some cases, Employee shall provide such services for patients referred by Employer and, in other cases, for patients acquired by Employee. Employee understands and agrees that all

Exhibit 1

Filed in District Court
State of Minnesota
9/16/2021 9:14 PM

2

patients are patients of Associates in Psychiatry and Psychology, P.A. (APP) as Employer and not of Employee individually. Employee specifically represents to Employer and agrees that he shall maintain thorough and up to date electronic health records of all services for each appointment and service provided and shall ensure that the billing department receives all of Employee's daily charge slips promptly. Employer provides training on use of the EHR system and retains a service to troubleshoot any problems with the records system. Employer will provide a computer for business usage. Employer will provide appointment scheduling, appointment confirmation calls, insurance verification, billing services, collection services, prior authorization updates, provider network updates, insurance network credentialing, calculation and submission of Employee's portion of the Minnesota Care taxes, receptionist duties, mail, scanning and fax processing, patient reminder calls or texts, file management, direct deposit paychecks and monthly provider and administrative reports. All facilities management such as snow plowing, building maintenance, lawn maintenance, office cleaning, coffee and tea service are provided by Employer. Employer also provides all furnishing and decorations for Employee's office. Employer will provide a medical assistant to Employee with duties defined by Employees practice needs.

Employee further understands and agrees that, if at any time Employee has questions or concerns as to the substance or procedure involved in any services referred to herein, Employee shall promptly raise such questions or concerns with the provider relations manager.

**Compensation.** The parties agree that, as for compensation employee will be paid sixty (60%) of collected receivables, which shall be understood to be those payments already collected and listed as 'payments' on the Monthly Provider Summary Report prepared by Employer's billing department and approved by Employer) on the revenue that Employee personally generates for APP per month for each specific month, less all applicable local, state and federal withholdings, or other deductions employee wishes to take (examples: set asides for health savings account, medical or retirement savings accounts). Employee agrees that payment shall be made by Employer to Employee (or directly deposited by Employer to Employee's personal bank account), every other Friday based on the prior period's receipts and Employee shall sign all appropriate forms in a timely manner to facilitate payment. Should there be a holiday on one of these dates, paychecks will be deposited the following business day. Employee further understands that all case notes must be completed in order to bill for the session.

Furthermore, employee understands and agrees that Employer does not pay sick leave or vacation days at any time and that he shall receive no payment therefore. Employee understands and agrees that Employer does not pay for individual expenses such as travel, books, professional journals or memberships in professional organizations. Employee is responsible for and shall pay for all such expenses such as continuing education credits, license renewals and malpractice insurance. As a condition of Employee's employment, Employee shall use her reasonable efforts to promote the business and practice of Employer and Employee. Additionally, Employer agrees to provide, in its sole discretion, periodic media advertisements, professional website presence, social media presence, individual "door" nameplate, business cards, professional letterhead for business correspondence, personalized business e-mail and internal communications between employees. Employee agrees that Employee's consent and authorization shall be assumed as having been given for any advertising undertaken by Employer to further Employer's and Employee's interests regarding APP. Employee further agrees that Minnesota Care Tax is the shared responsibility

of Employer and Employee and that Employer shall deduct Employee's share, which shall be Sixty (60%) beginning with first paycheck on collected payments.

**Insurance.** Employee will maintain individual professional malpractice coverage, with a minimum of $ 1,000,000.000 single/ $3,000,000.00 aggregate coverage, which shall be primary. Employer maintains an umbrella malpractice policy for the practice which is a second layer of protection above and beyond the individual employee's coverage. Employer also retains a professional risk management group which provides consultation and attorney representation should a professional complaint be lodged against an Employee.

5. **Benefits.** Employee is eligible to participate in the pre-tax SEP IRA plan with matching funds provided by Employer. Employer provides a financial consultant for Employee who wishes support in financial planning. An Employee who works a minimum of .5 FTE (20 hours per week) is eligible to participate in the Dental Plan. An Employee who works full time (24 sessions per week) is eligible to participate in the medical benefits plan.

6. **Employer's Practice Expectations of Employee.** Employee understands that Employer has the following practice expectations of Employee and agrees that he will comply:

   a. Employee's professional credentials **must** be displayed at all times.

   b. As a member of Employer's practice, Employee shall contribute to its overall positive image and environment by his professional demeanor, conduct, acts, writing and representation and shall willingly participate in office activities related to the running and promotion of the practice at all times.

   c. Employee shall attend and from time to time present on a professional topic, in the once a month staff meetings in a positive and professional manner, and is encouraged to volunteer for a minimum of one speaking engagement and at least one time per year when he represents Employer in the public forum, doing so outside of business hours and without compensation therefore.

   d. Upon Employee's taking FMLA time, Employee's job can be held for six (6) months subject to, agreement by the Employer in writing, Employee's satisfactory compliance with notice and conditions for leave set by Employer, and based on "no undue business hardship" to Employer. Employee understands that office space is limited and upon return may have a shared office space arrangement if no single offices are available.

   e. Employee shall use any APP office or practice equipment such as telephone, fax, computer, supplies and similar items, **only** for work related activities.

   f. Employee is responsible for completing all professional correspondence, professional reports, intake assessments, progress notes and completion of all mandated reporting requirements such as PHQ-9's, etc.

   g. Employee agrees to limit referrals to outside clinics or practitioners unless to do so is in the patient's best interest or in the case where there is a need for a higher level of care such as a day treatment program or an in-patient treatment facility.

h. In the event that Employee's illness necessitates cancellation of patient appointments, Employee shall make her best effort to re-schedule such patient/s within the same week as the appointment cancelled.

i. All vacation days and sick leave days taken by Employee are unpaid. To ensure the patients' best interests in the event that Employee takes vacation time, Employee is encouraged to provide notice to support staff of her proposed dates of absence, a minimum of thirty (30) days (or as soon as possible) in advance.

j. No loans or salary advances shall be made to Employee or received by Employee from Employer at any time and no loans or personal financial transactions shall be undertaken by Employee with or for any other APP employee/s.

k. Employee shall familiarize herself with Employer's Policies and Procedures Handbook and shall follow all guidelines but understands, acknowledges and agrees that Employer reserves the right and has the right to reserve and change its policies and procedures at any time without further notice. Employee specifically acknowledges and agrees that none of Employer's policies or procedures or the Policy and Procedure Handbook itself create any employment offers, promises, guarantees, representations or rights for Employee outside of what is written in this Agreement.

l. Employee shall make an effort to have a current knowledge of all insurance updates, managed care network guidelines and re-credentialing guidelines during employment.

m. Employee is solely responsible to complete patient reports and requests for information in a prompt and timely manner.

n. Employee shall maintain a current knowledge of all licensing requirements, mandatory reporting, HIPAA and other laws relevant to practicing in the mental health field and shall comply with all legal requirements and the highest possible ethical standards therein. Any violation of licensing and other laws and ethics described herein breaches the material terms of this Agreement and is an example of conduct, which could result in immediate termination.

7. **Patient Data.** Employee specifically understands and agrees that all patient files, computer records and data of any description are the property of Employer and that no file or information concerning a patient may be taken out of APP's facility unless necessary, and on any occasion, unless transported by Employee in a locked container or password protected computer. Employee further understands and agrees that all patient data shall be held in the strictest confidence and that a violation of patient confidentiality is an example of conduct which could warrant immediate dismissal. Employee agrees and shall sign APP's Confidentiality Agreement, which shall be attached hereto, and made a part hereof and incorporated herein. Employee understands, acknowledges and agrees that Employer has all final decision-making authority with respect to procedures involving patients, their files and accounts. Employee further understands that her wishes will be taken into consideration regarding charging for no show appointment or requests that a patient not be sent to collections due to extenuating circumstances.

8. **Outside Employment/Non-Compete.** Employee acknowledges and agrees that through

APP, he may upon his approval, from time to time, be introduced to and provide services for, discuss, pursue or accept any professional consulting, service or employment arrangement with or through any such outside business or agency outside of services performed by Employee on APP's behalf, without Employer's express consent and authorization in writing. Employee further agrees that he shall not discuss, pursue or accept any professional consulting, service or employment arrangement with or through any outside independent facility offering substantially the same or equivalent services as APP at any time during employment at APP, without Employer's express consent and authorization in writing. Employee understands, acknowledges and agrees that the breach of this paragraph and any of its terms is an example of conduct breaching material terms of this Agreement and which could be grounds for immediate termination. Employee acknowledges and agrees that nothing in this paragraph or agreement is intended to interfere with Employee's professional status or pursuit of his livelihood or the best interests of a patient

9. **Post Termination Non-Compete and Solicitation.** Employee understands, acknowledges and agrees that Employer's obligation is to assure the best treatment possible for its patients and to protect its customer goodwill and interests and that the agreements contained in this Agreement and paragraph are made for that purpose. Employee agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, whether or not Employee is terminated from employment, Employee shall not, directly or indirectly, provide work or services at or for any outside entity offering the same or equivalent services as APP within a thirty (30) mile radius of any APP office or facility. Employee further agrees that, for a period of six months , measured from the date of Employee's separation from employment with Employer, Employee shall not, for any reason, without written consent by Employer, either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient, or solicit or offer to employ or employ any individual employed or formerly employed by Employer, or request, advise or entice any such individual to leave the employment of Employer.

This non-compete strives to be as limited in scope as possible. The non-compete does not restrict or interfere with former employee's right to work in hospital settings, prison setting, educational settings, research institutions, day treatment programs or county, state or federal positions. The non-compete is solely in place to prevent previous employees from direct competition with the services provided at APP and to prevent the transfer of APP patients to other clinics.

The following restriction is therefore in place. Former employee is prohibited from opening a private practice or joining an established out-patient therapy group, practice or clinic for a period of six months from date of separation for a distance of 30 mile radius in any direction from the Rochester office or any APP office worked at over the previous 12 months.

10. **Covenant re. Proprietary Data.** Employee agrees without time limitation that he will not retain, copy, use or disclose any confidential or proprietary information, or any other sensitive information of Employer, during or following Employee's separation from employment, no matter what the nature, reasons or circumstances of that separation.

Employee further acknowledges and agrees that confidential proprietary and sensitive information includes but is not limited to, personal, financial, research, organizational, treatment, business, service and prescription pricing and discount, patient, policy, software or other information developed by Employer or its employees, and any and all documents prepared by or in the course of employment with Employer, including all copies thereof, whether in documentary, computer storage, audio/video tape or other medium or form. Employee further understands and agrees that any research work and conclusions, endeavors, consequences or products including but not limited to financial, resulting from Employee's work or Employee's collaboration with inside or outside persons regarding work he performs at or for APP during the time of his employment with Employer, is the property of Employer, unless the parties agree otherwise in writing.

**Termination of Employment.** Out of regard for the best interests of the patients, in the event that Employee wishes to terminate the employment relationship with Employer, Employer requests, but does not require, that Employee provides written notice of termination to Employer a minimum of ninety (90) days prior to the desired termination date with flexibility in providing more notice to assure enough time to hire a new provider to fill the vacated position. Employee specifically acknowledges and agrees that the actual date of termination may be set at any time during the ninety (90) days' notice period using reasonable discretion. Employee agrees that in the event of Employee's termination of employment with Employer, in order to ensure patient best interests and a smooth transition, Employee's patient caseload shall be transferred to other practitioners with Employer, according to area of expertise and patient need. Employee agrees that she will cooperate in all regards with Employer and other practitioners and staff regarding any matters and issues that arise or any facts about which Employee may have knowledge, whether during or after patient transfer. Employee further agrees that, in the event that any issue concerning a patient handled by Employee arises during or after the time that Employee has separated from employment with Employer, Employee will cooperate fully with Employer, its insurers, attorneys or other equivalent agent's or representative's requests concerning whatever issue, matter or fact is in question, including but not limited to giving testimony on behalf of Employer. Employee acknowledges the necessity of obtaining tail malpractice insurance and this is to be deducted from his final paycheck. Employee shall continue to receive payments on receivables for ninety (90) days following the Employee's last date of employment on the following conditions: a) Employee has timely submitted the charge slips as described in paragraph #3 above; and b) Employee has given Employer ninety (90) days' notice. Should the conditions of a through herein not be complied with, Employee acknowledges and agrees that he shall be paid only up to and including Employee's last day of employment, and only for prior billed and/or collected receipts as described in paragraph #3 above. Employee agrees that any receivables still outstanding for services after last day of employment and past the 90-day period shall go towards Employer's recouping costs associated with advertising and hiring a new Employee. The parties also agree that Employee may not copy professional reports, research or case file notes upon leaving APP. Employee further understands that Employer shall write an official letter to patients informing them of the Employees separation from the group and that the Employee will have the opportunity to co-sign letter.

11. **APP's Reservation of Rights**. Employer retains all necessary rights to operate and direct. APP and its affairs in all aspects and to make final decisions in that regard, during and after Employee's employment. The parties agree that Employer's judgment in connection with the rights referred to herein and the implementation thereof shall not be the subject of any claim against Employer/APP by Employee. Employer agrees to consult with employee in matters connected to billed fees and services and will not reverse or return fees billed or received without written approval of employee.

12. **Injunctive Relief**. The parties acknowledge and agree that the covenants contained in this Agreement are for the protection of Confidential Information together with patient best interests, goodwill and Employer's other bona fide protectable interests and that a breach of any covenant in this Agreement may cause serious and irreparable damage to Employer. Employee agrees that damages at law would be an inadequate remedy for a breach of the covenants contained herein and that, in addition to any and all other remedies at law to which Employer would otherwise be entitled, Employer shall be entitled to injunctive relief with respect to any breach by Employee of this Agreement's covenants.

13. **Non-Assignment**. The parties agree that this Agreement and its rights and duties shall not be assignable by either party unless the other party agrees in writing.

14. **Merger**. This Agreement and the provisions herein supersede all prior oral and written agreements and communications between the parties.

15. **Entire Agreement**. The parties agree that this Agreement constitutes their entire agreement and there were no inducements or representations leading to the execution of this Agreement except as contained here.

16. **Modification**. This Agreement may not be modified by either party except in writing and agreed by both parties.

17. **Severability**. In case any one or more of the provisions of this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of this Agreement's remaining provisions shall not be affected or impaired in any way thereby.

18. **Controlling Law**. The parties agree that the law of the State of Minnesota shall control the interpretation and enforcement of this Agreement.

19. **Gender**. Any reference to the masculine gender is intended to refer also to the feminine, and likewise, any use of the singular is intended to refer to the plural as appropriate, and the masculine gender is used only for simplicity and not for any discriminatory purpose.

8.

20. **Voluntary and Knowing Action,** Employee agrees and acknowledges that she has had the opportunity to consult with an attorney of his/her choice and to have this Agreement reviewed, and that Employee has read and understands the terms of this Agreement and is voluntarily signing and entering into this Agreement.

Dated: Employer

ASSOCIATES IN PSYCHIATRY
AND PSYCHOLOGY, PA.

_____

Franklin Merchant, Associates in Psychiatry and Psychology

Sheila Dunn, APRN, CNP, PMHNP 04/24/2020

# Exhibit A-4

Filed in District Court
State of Minnesota
9/21/2021 4:32 PM

## Affidavit of Service

STATE OF MINNESOTA )
                   )  SS.
COUNTY OF OLMSTED  )

     Barbara Mallet, under penalty of perjury, states that on the 21st day of September, 2021, at 4:02 p.m. she served the following:

### *Notice to Remove*

upon:

Associates in Psychiatry and Psychology, P.A.
3103 Superior Dr. NW
Rochester, MN  55901
(507) 288-8545

by facsimile reproduction directed to said party at the above-stated facsimile number, the last known facsimile number of said party.

I declare, on this 21st day of September, 2021 in Olmsted County, Minnesota, under penalty of perjury, that everything stated in this document is true and correct.



       */s/Barbara Mallet*
       Barbara Mallet

*Sheila M. Dunn v. Associates in Psychiatry and Psychology, P.A. and Does 1–10*
*Court File No. 85-CV-21-1472*

# Exhibit A-5

**STATE OF MINNESOTA**  
**COUNTY OF WINONA**

**DISTRICT COURT – CIVIL DIVISION**  
**THIRD JUDICIAL DISTRICT**

**Case Type: Employment**

---

Sheila M. Dunn,

Plaintiff,

v.

Associates in Psychiatry and Psychology,
P.A. and Does 1–20,

Defendants.

Case No.: 85-CV-21-1472
Hon. Nancy L. Buytendorp

**DEFENDANTASSOCIATES IN**
**PSYCHIATRY AND PSYCHOLOGY,**
**P.A.'S ANSWER TO THE COMPLAINT,**
**AFFIRMATIVE DEFENSES, &**
**COUNTERCLAIMS**

---

COMES NOW, Defendant Associates in Psychiatry and Psychology ("APP") and for its Answer to Plaintiff Sheila M. Dunn's ("Plaintiff") Complaint herein states as follows:

Unless expressly admitted, APP denies each and every allegation in the Plaintiff's Complaint.

**THE PARTIES**

1.      APP admits on information and belief that at a certain relevant time, Plaintiff resided in Winona County in the State of Minnesota.

2.      APP admits the allegations contained in paragraph 2 of the Complaint.

3.      APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint.

4.      APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint.

5.      APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

1

6.      APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7.      Paragraph 7 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP admits that this Court holds subject matter jurisdiction over this case.

8.      Paragraph 7 in the Complaint contains a legal conclusion to which no answer is required. To the extent an answer is required, APP denies the allegations.

## FACTUAL BACKGROUND

9.      APP admits that Plaintiff purports to bring claims arising out of her employment with APP. APP admits that Dunn's employment with APP began in or around May of 2020.

10.      APP admits that Plaintiff was a registered nurse and certified nurse practitioner during the time of her employment with APP. APP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint.

11.      APP admits the allegations contained in paragraph 11 of the Complaint only to the extent they are consistent with the employment contract between Plaintiff and APP, which speaks for itself.

12.      APP admits the allegations in paragraph 12 only to the extent they are consistent with the referenced document, which speaks for itself.   APP denies all other remaining allegations.

13.      APP denies the characterization of the Employment Agreement and denies that the Employment Agreement failed to contain information required by law as alleged in paragraph 13. The document speaks for itself. .

14.      APP denies the characterization of the Employment Agreement and denies that it

2

Filed in District Court
State of Minnesota
10/27/2021 5:04 PM

compensated Plaintiff "based upon an illegal profit-sharing scheme" as alleged in paragraph 14. The document speaks for itself.

15.     APP admits the allegations in paragraph 15 only to the extent they are consistent with the referenced document, which speaks for itself. APP denies all other remaining allegations.

16.     APP admits the allegations in paragraph 16 only to the extent they are consistent with the referenced documents, which speak for themselves. APP denies that all other remaining allegations.

17.     APP denies the allegations contained in paragraph 17 of the Complaint.

18.     APP denies the allegations contained in paragraph 18 of the Complaint.

19.     APP denies the allegations contained in paragraph 19 of the Complaint.

20.     APP denies the allegations contained in paragraph 20 of the Complaint.

21.     APP denies the allegations contained in paragraph 21 of the Complaint.

22.     APP denies the allegations contained in paragraph 22 of the Complaint.

23.     APP denies the allegations contained in paragraph 23 of the Complaint.

24.     APP denies the allegations contained in paragraph 24 of the Complaint.

25.     APP denies the allegations contained in paragraph 25 of the Complaint.

26.     In response to paragraph 26, APP admits that Plaintiff has violated multiple restrictive covenants contained within her Employment Agreement as well as common law duties owed to employers. APP denies the remaining allegations in paragraph 26 of the Complaint.

27.     APP denies the allegations contained in paragraph 27 of the Complaint.

28.     APP denies the allegations contained in paragraph 28 of the Complaint.

29.     APP denies the allegations contained in paragraph 29 of the Complaint.

30.     APP is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 30 of the Complaint.

31.     APP denies the allegations contained in paragraph 31 of the Complaint.

32.     APP denies the allegations contained in paragraph 32 of the Complaint.

33.     APP denies the characterization of the provision cited from the Employment Agreement, which is incomplete, as alleged in paragraph 33 of the Complaint.   The document speaks for itself.

34.     APP admits the allegations in paragraph 34 only to the extent they are consistent with the referenced document, which speaks for itself.   APP denies all other remaining allegations.

35.     APP denies the characterization of the allegations in paragraph 35 to the extent they are inconsistent with the referenced document, which speaks for itself.

36.     APP admits the allegations in paragraph 36 only to the extent they are consistent with the referenced document, which speaks for itself.   APP denies all other remaining allegations.

37.     APP denies the allegations contained in paragraph 37 of the Complaint that APP's agents attacked and blamed Plaintiff. APP further denies the characterization that APP did not comply with the referenced provision of the Employment Agreement.

38.     APP denies the allegations contained in paragraph 38 of the Complaint.

39.     APP denies the characterization of the allegations contained in paragraph 39 of the Complaint.

40.     In response to paragraph 40, APP admits and affirmatively alleges that Plaintiff has violated multiple restrictive covenants contained within her Employment Agreement as well as common law duties owed to APP by Plaintiff as her employer. APP denies the characterization of the remaining allegations in paragraph 40 of the Complaint.

41.     In response to paragraph 41, APP affirmatively alleges that Plaintiff has violated

multiple restrictive covenants contained within her Employment Agreement as well as common law duties owed to APP by Plaintiff as her employer. APP denies the characterization of the remaining allegations in paragraph 41 of the Complaint.

42.     Paragraph 42 of the Complaint contains a legal conclusion to which an answer is not required.   To the extent an answer is required, APP denies the characterization of the allegations in paragraph 42 to the extent they are inconsistent with the referenced document, which speaks for itself.

43.     APP denies the allegations contained in paragraph 43 of the Complaint.

44.     APP denies the characterization of the allegations in paragraph 44 to the extent they are inconsistent with the referenced document, which speaks for itself.

45.     Upon information and belief, APP denies the allegations contained in paragraph 45 of the Complaint.

46.     APP denies the allegations contained in paragraph 46 of the Complaint.

47.     APP denies the allegations contained in paragraph 47 of the Complaint.

48.     APP denies the allegations contained in paragraph 48 of the Complaint.

49.     APP denies the allegations contained in paragraph 49 of the Complaint.

50.     APP denies the allegations contained in paragraph 50 of the Complaint.

51.     APP denies the allegations contained in paragraph 51 of the Complaint.

52.     APP admits the allegations in paragraph 52 only to the extent they are consistent with the referenced document, which speaks for itself. APP denies all other remaining allegations.

53.     APP denies the characterization of the allegations in paragraph 53 to the extent they are inconsistent with the referenced document, which speaks for itself.

54.     APP denies the allegations contained in paragraph 54 of the Complaint.

55.     APP denies the allegations contained in paragraph 55 of the Complaint.

56.     In response to paragraph 56, APP admits only that it provided billing and wage information to Plaintiff upon her request. APP denies all other remaining allegations.

57.     APP denies the allegations contained in paragraph 57 of the Complaint.

58.     APP denies the allegations contained in paragraph 58 of the Complaint.

59.     APP denies the allegations contained in paragraph 59 of the Complaint.

60.     APP denies the allegations contained in paragraph 60 of the Complaint.

61.     APP admits that Plaintiff's employment with APP was terminated on August 8, 2021.  APP expressly denies that her termination was related to Plaintiff's alleged complaints about needing additional information regarding how to code her billing.

62.     APP denies the allegations contained in paragraph 62 of the Complaint.

63.     APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63 of the Complaint.

64.     APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Complaint.

65.     APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Complaint.

66.     APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint.

## COUNT I

67.     In response to paragraph 67, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

68.     APP admits the allegations contained in paragraph 68 of the Complaint.

69.     In response to paragraph 69, APP admits that the restrictive covenants contained in the Employment Agreement are binding and enforceable. APP denies all other remaining allegations.

70.     APP denies the allegations in paragraph 70 to the extent they are inconsistent with the referenced document, which speaks for itself.

71.     APP denies the allegations in paragraph 71 to the extent they are inconsistent with the referenced document, which speaks for itself.

72.     Paragraph 72 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies the allegations contained in paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies the allegations contained in paragraph 73 of the Complaint.

74.     Paragraph 74 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies the allegations contained in paragraph 74 of the Complaint.

75.     APP admits only that paragraph 75 of the Complaint purports to set forth specific relief sought by Plaintiff from the Court. APP denies that Plaintiff is entitled to any relief whatsoever.

## COUNT II

76.     In response to paragraph 76, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more

fully set forth herein.

77.     Paragraph 77 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP admits that the Employment Agreement is enforceable. APP denies all other remaining allegations.

78.     Paragraph 78 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies that Plaintiff's compensation was illegal and denies all other remaining allegations.

79.     APP denies the allegations contained in paragraph 79 of the Complaint.

80.     APP denies the allegations contained in paragraph 80 of the Complaint.

81.     APP denies the allegations contained in paragraph 81 of the Complaint.

## COUNT III

82.     In response to paragraph 82, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

83.     Paragraph 83 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP admits the allegations contained in paragraph 83 of the Complaint.

84.     APP denies the allegations contained in paragraph 84 of the Complaint.

85.     APP denies the allegations contained in paragraph 85 of the Complaint.

86.     APP denies the allegations contained in paragraph 86 of the Complaint.

87.     APP denies the allegations contained in paragraph 87 of the Complaint.

## COUNT IV

88.     In response to paragraph 88, APP repeats, reiterates and re-alleges each and every

answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

89.     Paragraph 89 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies that Plaintiff is a non-exempt employee.

90.     Paragraph 89 of the Complaint contains a legal conclusion to which an answer is not required.

91.     APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the Complaint.

92.     In response to paragraph 92, APP denies the characterization that it "failed," and admits only that it paid Plaintiff as agreed to in her Employment Agreement, which speaks for itself. APP affirmatively alleges that Plaintiff is a "non-exempt" employee.

93.     APP denies the allegations contained in paragraph 93 of the Complaint.

94.     APP denies the allegations contained in paragraph 94 of the Complaint.

## **COUNT V**

95.     APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in paragraph 95 of the Complaint. APP denies that the quoted portion of the Statute is stated in context or is otherwise applicable here.

96.     APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in paragraph 96 of the Complaint. APP denies that the quoted portion of the Statute is stated in context or is otherwise applicable here.

97.     Paragraph 97 of the Complaint contains a legal conclusion to which an answer is not required.   To the extent an answer is required, APP admits only that the Employment

Agreement is a contract and denies all other remaining allegations.

98.     APP denies the allegations contained in paragraph 98 of the Complaint.

99.     APP denies the allegations contained in paragraph 99 of the Complaint.

100.    Paragraph 100 of the Complaint contains a legal conclusion to which an answer is not required.

101.    Paragraph 101 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies that Plaintiff is owed any earned, unpaid wages.

102.    Paragraph 102 of the Complaint contains a legal conclusion to which an answer is not required.  To the extent an answer is required, APP denies the allegations.

103.    APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in paragraph 103 of the Complaint. APP denies that the quoted portion of the Statute is stated in context or is otherwise applicable here. APP denies all other remaining allegations.

104.    APP denies the allegations contained in paragraph 104 of the Complaint.

105.    APP denies the allegations contained in paragraph 105 of the Complaint.

106.    APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in paragraph 106 of the Complaint. APP denies that the quoted portion of the Statute is stated in context or is otherwise applicable here. APP denies all other remaining allegations.

107.    APP denies the allegations in paragraph 107 of the Complaint.

108.    APP denies the allegations in paragraph 108 to the extent they are inconsistent with the referenced document, which speaks for itself.

109.    APP denies the allegations contained in paragraph 109 of the Complaint.

110.    APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in

paragraph 110 of the Complaint. APP denies that the quoted portion of the Statute is stated in context or is otherwise applicable here.

111.    APP denies the allegations contained in paragraph 111 of the Complaint.

112.    APP denies the allegations contained in paragraph 112 of the Complaint.

113.    APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in paragraph 113 of the Complaint. APP denies that the quoted portion of the Statute is stated in context or is otherwise applicable here.

114.    APP denies the allegations contained in paragraph 114 of the Complaint.

115.    APP denies the allegations contained in paragraph 115 of the Complaint.

116.    APP denies the allegations contained in paragraph 116 of the Complaint.

117.    APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Complaint.

118.    APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of the Complaint.

### COUNT VII

119.    In response to paragraph 119, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

120.    APP admits only that Plaintiff purports to plead Count VII as an alternate count to Counts II and III.  APP denies that Plaintiff is not entitled to relief under Count II, III or VII.

121.    APP admits only that Plaintiff was employed by APP pursuant to the terms of an Employment Agreement, which speaks for itself. APP denies all other remaining allegations.

122.    APP denies the allegations contained in paragraph 122 of the Complaint.

123.    APP denies the allegations contained in paragraph 123 of the Complaint.

124.    APP denies that Plaintiff is owed any earned, unpaid wages.

## COUNT VIII

125.    In response to paragraph 125, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

126.    APP admits only that Plaintiff purports to plead Count VIII as an alternate count to Counts II and III.  APP denies that Plaintiff is not entitled to relief under Count II, III or VIII.

127.    APP denies that Plaintiff has not been fully paid for her labor and admits only that Plaintiff was employed by APP pursuant to the terms of an Employment Agreement, which speaks for itself. APP denies all other remaining allegations.

128.    APP denies the allegations contained in paragraph 128 of the Complaint.

129.    APP denies the allegations contained in paragraph 129 of the Complaint.

130.    APP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Complaint.

131.    APP denies the allegations contained in paragraph 131 of the Complaint.

132.    APP denies the allegations contained in paragraph 132 of the Complaint.

## COUNT IX

133.    In response to paragraph 133, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

134.    APP admits only that Plaintiff purports to quote a portion of a Minnesota Statute in paragraph 134 of the Complaint. APP denies that the quoted portion of the Statute is stated in

Filed in District Court
State of Minnesota
10/27/2021 5:04 PM

context or is otherwise applicable here.

135.     APP denies the allegations contained in paragraph 135 of the Complaint.

136.     APP denies the allegations contained in paragraph 136 of the Complaint.

137.     APP denies the allegations contained in paragraph 137 of the Complaint.

138.     APP denies the allegations contained in paragraph 138 of the Complaint.

139.     APP denies the allegations contained in paragraph 139 of the Complaint.

## **COUNT X**

140.     In response to paragraph 140, APP repeats, reiterates and re-alleges each and every answer to each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

141.     APP denies the allegations contained in paragraph 141 of the Complaint.

142.     APP denies the allegations contained in paragraph 142 of the Complaint.

143.     APP denies the allegations contained in paragraph 143 of the Complaint.

144.     APP denies that Plaintiff is entitled the relief requested in her Request For Relief.

## **AFFIRMATIVE DEFENSES**

APP's Affirmative Defenses to Plaintiff's Complaint states as follows:

1.     The Complaint fails to state a claim or claims against Defendant upon which relief can be granted or, alternatively, that Plaintiff has failed to set forth sufficient material facts to support claims against Defendant, including failure to plead that all conditions precedent have occurred, been complied with, or waived.

2.     Plaintiff's own negligent acts, omissions, or other fault caused and contributed to Plaintiff's alleged damages. Any purported damages to Plaintiff were caused, in whole or in part,

by Plaintiff's wrongful actions. Therefore, Plaintiff may only recover that proportion of damages for which she is not responsible, due to her own fault.

3.      Plaintiff's alleged damages, if any, are caused in whole or in part by her own conduct or omissions or the conduct or omissions of third-parties over whom Defendant are not responsible and for whose actions or inactions Defendant are not liable.

4.      Plaintiff has failed to take reasonable steps to avoid and/or mitigate her alleged damages. Had Plaintiff timely and diligently taken reasonable steps to avoid and/or mitigate her alleged damages, such damages would have been reduced or avoided altogether. By failing to mitigate damages, Plaintiff is barred, in whole or in part, from recovering damages, if any, in this action. Plaintiff's recovery, if any, should therefore be reduced by an amount proportionate to the amount by which such failure to mitigate caused and contributed to Plaintiff's alleged damages.

5.      Plaintiff's Complaint and each cause of action fail because Defendant and/or their agents acted in good faith and in a reasonable manner and in accordance with applicable laws at all relevant times.

6.      Plaintiff is unable to prove that she has sustained any damages.

7.      Plaintiff has already been fully compensated for all of the claims that she is asserting in this Complaint.

8.      Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel.

9.      Plaintiff is estopped from bringing this claim as a matter of law.

10.     Plaintiff has waived the subject claims.

11.     Plaintiff's claims are barred because she is an exempt employee.

12.     Plaintiff's claims are barred or limited, in whole or in part, by the terms of the applicable contract or agreement.

13.     Plaintiff's requested remedies and damages sought are barred or limited, in whole or in part, by contract or agreement.

14.     Plaintiff's claims may be barred, in whole or in part, by the applicable statutes of limitation or other any contractual limitation periods applicable to such claims.

15.     Except as specifically provided by law, Plaintiff is not entitled to recover attorneys' fees, costs, disbursements, or interest.

16.     Plaintiff's alternative quasi contract claims should be dismissed as there exists an enforceable contract between the parties.

17.     Plaintiff's claims fail to the extent she accepted, ratified, consented to, and acquiesced in the alleged acts or omissions, if any, of the answering Defendant, or otherwise alleged in the Complaint.

18.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

19.     Plaintiff's alleged injuries were caused, in whole or in part, by Plaintiff's voluntary actions.

20.     Plaintiff would be unjustly enriched by any recovery from this answering Defendant.

21.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

22.     To the extent applicable to this answering Defendant, Defendant incorporates by reference all affirmative defenses applicable to other defendants.

23.     Defendants allege that the claims asserted may be barred by any or all of the affirmative defenses contemplated by Rule 8.03 of the Minnesota Rules of Civil Procedure. To the extent which the Plaintiff's claims may be barred by one or more of the affirmative defenses not

Filed in District Court
State of Minnesota
10/27/2021 5:04 PM

specifically cited above which cannot be determined until there has been further discovery, these answering Defendants incorporate all such affirmative defenses set forth in, or contemplated by, Rule 8.03.

24.     Defendants reserve the right to raise any additional defenses as may be revealed by discovery in this matter.

**WHEREFORE**, Defendant Associates in Psychiatry and Psychology, P.A., respectfully request that the Plaintiff's Complaint be dismissed, for their fees and costs incurred in defending against the Complaint, and for all other relief this Court deems fair and proper.

## COUNTERCLAIMS

**COMES NOW**, Defendant/Counter-Plaintiff, Associates in Psychiatry and Psychology ("APP"), and for its claims against Plaintiff/Counter-Defendant, Sheila M. Dunn's ("Dunn") alleges as follows:

1.     APP is a Minnesota limited liability company with its primary place of business in Rochester, Minnesota.

2.     Dunn is a natural person who, on information and belief, resides in Winona County, Minnesota.

3.     On April 24, 2020, APP and Dunn entered into an employment agreement (the "Employment Agreement") upon the terms set forth in Exhibit 1 of Plaintiff's Complaint.

4.     Dunn executed the Employment Agreement at the inception of her employment relationship with APP.

5.     Dunn's Employment Agreement with APP contained various restrictive covenants including a covenant not to compete, a covenant not to solicit, and a covenant of confidentiality.

6.     The covenant not to compete, covenant not to solicit, and covenant of confidentiality agreed to by Dunn were ancillary to her Employment Agreement with APP.

7.     The restrictive covenants are set forth in the Employment Agreement as follows:

8. Outside Employment/Non-Compete. Employee acknowledges and agrees that through APP, he may upon his approval, from time to time, be introduced to and provide services for, discuss, pursue or accept any professional consulting service or employment arrangement with or through any such outside business or agency outside of services performed by Employee on APP's behalf, without Employer's express consent and authorization in writing. Employee further agrees that he shall not discuss, pursue or accept any professional consulting, service or employment arrangement with or through any outside independent facility offering substantially the same or equivalent services as APP at any time during employment with APP, without Employer's express consent and authorization in writing. Employee understands, acknowledges and agrees that the breach of this paragraph and any of its terms is an example of conduct breaching material terms of this Agreement and which could be grounds for immediate termination. Employee acknowledges and agrees that nothing in this paragraph or agreement is intended to interfere with Employee's professional status or pursuit of his livelihood or the best interests of the patient.

9. Post Termination Non-Compete and Solicitation. Employee understands, acknowledges and agrees that Employer's obligation is to assure the best treatment possible for its patients and to protect its customer goodwill and interests and that the agreements contained in this Agreement and paragraph are made for that purpose. Employee agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, whether or not Employee is terminated from employment, Employee shall not, directly or indirectly, provide work or services at or for any outside entity offering the same or equivalent services as APP within a thirty (30) mile radius of any APP office or facility. Employee further agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, Employee shall not, for any reason without written consent by Employer, either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient, or solicit or offer to employ or employ any individual employed by or formerly employed by Employer, or request, advise or entice any such individual to leave the employment of Employer.

This non-compete strives to be as limited in scope as possible. The non-compete does not restrict or interfere with former employee's right to work in hospital settings, prison setting, educational settings, research

17

institutions, day treatment programs or county, state or federal positions. The non-compete is solely in place to prevent previous employees from direct competition with the services provided by APP and to prevent the transfer of APP patients to other clinics.

The following restriction is therefore in place. Former employee is prohibited from opening a private practice or joining an established out-patient therapy group, practice or clinic for a period of six months from date of separation for a distance of 30 mile radius in any direction from the Rochester office or any APP office worked at over the previous 12 months.

10. Covenant re. Proprietary Data. Employee agrees without time limitation that he will not retain, copy, use or disclose any confidential or proprietary information, or any other sensitive information of Employer, during or following Employee's separation from employment, no matter what the nature, reasons or circumstances of that separation. Employee further acknowledges and agrees that confidential proprietary and sensitive information includes but is not limited to, personal, financial, research, organizational, treatment, business, service and prescription pricing and discount, patient, policy, software, or other information developed by Employer or its employees, and any and all documents prepared by or in the course of employment with Employer, including all copies thereof, whether in documentary, computer storage, audio/video tape or other medium or form. Employee further understands and agrees that any research work and conclusions, endeavors, consequences or products including but not limited to financial, resulting from Employee's work or Employee's collaboration with inside or outside persons regarding work her performs at or for APP during the time of his employment with Employer, is the property of Employer, unless the parties agree otherwise in writing.

8.      The "Post Termination Non-Compete and Solicitation" covenant is geographically limited to a 30 mile radius in any direction from the Rochester office or any APP office worked at over the previous 12 months.

9.      The "Post Termination Non-Compete and Solicitation" covenant limited in time to a period of six months from the date of Dunn's separation from APP.

10.     Despite the covenant not to compete, Dunn accepted employment with Synergy Family Psychiatric Services, LLC ("Synergy").

11.     Dunn admits in paragraph 8 of her declaration filed in support of her motion for

18

TRO that she works for Synergy.

12.    Dunn's employment with Synergy began within six (6) months of her separation from APP.

13.    Synergy is a direct competitor of APP.

14.    Synergy offers substantially the same or equivalent services as APP.

15.    Synergy is an out-patient therapy group, practice or clinic.

16.    Dunn engages in substantially the same or equivalent services for or on behalf of Synergy that she did while employed at APP.

17.    Dunn's work for Synergy occurs within a thirty (30) mile radius of an APP office or facility.

18.    Dunn's work for Synergy occurs within a 30 mile radius in any direction from the Rochester office or any APP office that Dunn worked at over the previous 12 months.

19.    Dunn has been compensated by Synergy for her work for or on behalf of Synergy.

20.    Dunn's work with Synergy is not in a hospital setting, prison setting, educational setting, research institution, day treatment program or county, state or federal position..

## COUNT I – BREACH OF NON-SOLICITATION

21.    APP incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

22.    Dunn's Employment Agreement with APP contains a covenant not to solicit.

23.    Despite the covenant not to solicit, Dunn has solicited and continues to solicit APP patients for her new employer, Synergy.

24.    As a result of Dunn's breach of the covenant not to solicit, APP has been damaged.

25.    In   addition,   Dunn's   breach   of   covenant   not   to   solicit   has   and   continues   to

irreparably damage APP such that money damages are an inadequate remedy.

26.     APP is entitled to an injunction to prevent Dunn from continuing to breach her covenant not to solicit.

27.     As a result of Dunn's breach, APP is further entitled to disgorgement of Synergy's profits or damages measured in the amount of Synergy's profits that resulted from Dunn's breach of the covenant not to solicit.

**WHEREFORE**, Associated Psychiatry and Psychology, P.A. respectfully requests that this Court enter an injunction prohibiting Dunn from continuing to violate her covenant not to solicit and to award it damages of an amount greater than $50,000.00 to compensate it for Dunn's current breach, for attorneys' fees and costs, and for all other relief the Court deems appropriate.

## COUNT II – BREACH OF COVENANT OF CONFIDENTIALITY

28.     APP incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

29.     Dunn's Employment Agreement with APP contains a covenant of confidentiality.

30.     Despite the covenant of confidentiality, Dunn retained and used confidential and proprietary information belonging to APP during and following Dunn's separation from APP.

31.     Such confidential information includes patient information.

32.     As a result of Dunn's breach of the covenant of confidentiality, APP has been damaged.

33.     In addition, Dunn's breach of covenant of confidentiality has and continues to irreparably damage APP such that money damages are an inadequate remedy.

34.     APP is entitled to an injunction to prevent Dunn from continuing to breach her covenant of confidentiality.

20

**WHEREFORE**, Associated Psychiatry and Psychology, P.A. respectfully requests that this Court enter an injunction prohibiting Dunn from continuing to violate her covenant of confidentiality and to award it damages of an amount greater than $50,000.00 to compensate it for Dunn's current breach, for attorneys' fees and costs, and for all other relief the Court deems appropriate.

## COUNT III – BREACH OF FIDUCIARY DUTY

35.     APP incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

36.     Prior to her departure from APP, Dunn used her APP provided email address to solicit patients for her subsequent employer, Synergy

37.     As an employee of APP, Dunn owed to it certain fiduciary duties, including the duty of loyalty.

38.     Dunn breached her duty of loyalty to APP when she solicited patients for her new employer, Synergy, prior to her departure from APP and using her APP provided email address.

39.     As a result of Dunn's breach of duty of loyalty, APP has been damaged.

**WHEREFORE**, Associated Psychiatry and Psychology, P.A. respectfully requests that this Court enter judgment in its favor and award it damages of an amount greater than $50,000.00 to compensate it for Dunn's breach of her fiduciary duty of loyalty, for attorneys' fees and costs, and for all other relief the Court deems appropriate.

## COUNT IV – MISSAPPRIATION OF TRADE SECRETS

40.     APP incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

41.     The Minnesota Trade Secrets Act (the "Act") prohibits one from misappropriating

trade secrets.

42.     The confidential information retained and used by Dunn prior to her departure from APP, and in violation of a confidentiality agreement, constitutes "trade secrets" under the Act.

43.     Such confidential information derives independent economic value from not being generally known to and not being readily ascertainable by others, including APP's direct competitors.

44.     At the time of Dunn's use or disclosure of the trade secrets, she knew that the trade secret had been acquired subject to a confidentiality agreement.

45.     The Act provides that Actual or threatened misappropriation may be enjoined.

46.     The Act further provides that a complainant is entitled to compensation for actual loss, unjust enrichment, and a reasonable royalty for a defendant's misappropriation.

47.     The Act further provides that for a willful and malicious misappropriation, a complainant is entitled to attorneys' fees.

**WHEREFORE**, Associated Psychiatry and Psychology, P.A. respectfully requests that this Court enter an injunction prohibiting Dunn from continuing to misappropriate its trade secrets and to award it damages of an amount greater than $50,000.00 to compensate it for Dunn's misappropriation, for attorneys' fees and costs, and for all other relief the Court deems appropriate.

## COUNT V – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

48.     APP incorporates the allegations contained in the preceding paragraphs as if the same were fully set forth herein.

49.     APP has a reasonable expectation of economic benefit in providing continued service and care to its patients.

50.     Dunn knew about the expectation of economic benefit to APP in providing

continued service and care to its patients.

51.     Dunn wrongfully interfered with APP's expectation of economic benefit when she improperly retained patient information and solicited APP's patients for her new employer in violation of her Employment Agreement.

52.     In the absence of Dunn's wrongful act, APP would have realized this economic benefit by providing continued service and care to its patients.

53.     As a result of Dunn's wrongful interference, APP has sustained damages.

**WHEREFORE**, Associated Psychiatry and Psychology, P.A. respectfully requests that this Court enter judgment in its favor and award it damages of an amount greater than $50,000.00 to compensate it for Dunn's tortious interference with business expectancy, for attorneys' fees and costs, and for all other relief the Court deems appropriate.

Dated:  October 27, 2021

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:     /s/ *Ben Kinney*
Suzanne L. Jones,  MN Bar No. 389345
Benjamin R. Kinney, MN Bar No. 395769
Gordon Rees Scully Mansukhani LLP
100 S. 5th Street
Suite 1900
Minneapolis, MN 55402
Ph: 612-351-5969
sljones@grsm.com
bkinney@grsm.com
*Attorneys for Defendant Associates in Psychiatry and Psychology, P.A.*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn.

Stat. § 549.211.

Dated:  October 27, 2021

GORDON REES SCULLY MANSUKHANI, LLP


By: ____/s/ *Ben Kinney*_____
Suzanne L. Jones,  MN Bar No. 389345
Benjamin R. Kinney, MN Bar No. 395769
Gordon Rees Scully Mansukhani LLP
100 S. 5th Street
Suite 1900
Minneapolis, MN 55402
Ph: 612-364-1742
sljones@grsm.com
bkinney@grsm.com
*Attorneys for Defendant Associates in Psychiatry and Psychology, P.A.*

## AFFIDAVIT OF SERVICE

The undersigned, a non-attorney, being first duly sworn upon oath deposes and states that she served a copy of the foregoing document by electronic mail and by mailing a true and correct copy to all parties of record on October 27, 2021.



_Denise Pocica_____

# Exhibit A-6

Filed in District Court
State of Minnesota
November 16 2021

STATE OF MINNESOTA                                   DISTRICT COURT

COUNTY OF WINONA                            THIRD JUDICIAL DISTRICT

Court File No. 85-CV-21-1472

Shelia M. Dunn,
                 Plaintiff,
                                              **ORDER DENYING**
v.                                            **MOTION FOR TEMPORARY**
                                              **RESTRAINING ORDER**
Associates in Psychiatry and
Psychology, P.A. and
Does 1-20,
                 Defendants.

---

The above-entitled matter came before the Honorable Nancy L. Buytendorp via Zoom for Government on Plaintiff's motion for a Temporary Restraining Order and Temporary Injunction. Attorney James Godwin appeared on behalf of Plaintiff, Shelia M. Dunn, who also appeared. Attorneys Benjamin Kinney and Suzanne Jones appeared on behalf of Defendants Associates in Psychiatry and Psychology, P.A. and Does 1-20.

Based on the argument of counsel, as well as the files, records, and proceedings herein, the Court issues the following:

## **FINDINGS OF FACT**

1. This matter arises out of an employment agreement between Plaintiff and Defendant Associates in Psychiatry and Psychology, P.A. (hereinafter "APP").

2. Plaintiff began employment with APP around April 2020, shortly after being certified as a nurse practitioner. After accepting employment, Plaintiff was later presented with and signed an Employment Agreement (hereinafter "Agreement") on April 24, 2020.

3. For the duration of Plaintiff's employment with APP she provided services via telehealth only from her home in Winona, Minnesota. Dunn.

4. The employment agreement between Plaintiff and Defendant APP contained a "Post Termination Non-Compete and Solicitation" section that reads in relevant parts:

     a.   "Employee agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, whether or not Employee is terminated from employment, Employee shall not, directly or indirectly, provide work or services at or for any outside entity offering the same or equivalent services as APP within a thirty (30) mile radius of any APP office or facility."

     b.   "Employee further agrees that, for a period of six months, measured from the date of Employee's separation from employment with Employer, Employee shall not, for any reason, without written consent by Employer, either personally or through or on behalf of another entity or individual, solicit or offer or provide service to any patient, or solicit or offer to employ or employ any individual by or formerly employed by Employer, or request, advise or entice any such individual to leave the employment of Employer."

     c.   "Former employee is prohibited from opening a private practice or joining an established out-patient therapy group, practice or clinic for a period of six month from date of separation for a distance of 30-mile radius in any direction from the Rochester office or any APP office worked at over the previous twelve months."

5.   This "Post Termination Non-Compete and Solicitation" section included a limiting clause stating that it "does not restrict or interfere with former employee's right to work in [multiple] settings… [and] is solely in place to prevent previous employees from direct competition with the services provided at APP and to prevent the transfer of APP patients to other clinics."

6.   On July 9, 2021, Defendant APP terminated Plaintiff's employment with APP.

7.   Following her termination from APP, Plaintiff began working for Synergy Family Psychiatric Services, LLC, a direct competitor of APP.

8.   Plaintiff filed suit against Defendant APP on September 19, 2021, alleging, among other things, a need for declaratory relief regarding unenforceable restrictive covenants, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, wrongful termination, and violations of the Minnesota FLSA, Payment of Wages Act, and Wage Theft Prevention Act.

9.   While Plaintiff agrees that she signed the employment agreement containing restrictive covenants, she argues the restrictive covenants in the Agreement are contradictory and unenforceable and not supported by consideration.

10. Plaintiff now seeks a temporary restraining order/ temporary injunction enjoining enforcement of the non-complete restrictive covenants contained in the employment agreement and enjoining Defendant from representing to third parties that Plaintiff is violating non-compete restrictive covenants in the employment agreement.

11. Plaintiff also seeks an order requiring Defendants to produce all documentation used to calculate compensation and deductions for Plaintiff during her employment and arising out of her employment, including all documentation necessary to do said calculations correctly.

<u>CONCLUSIONS OF LAW</u>

1. Temporary restraining orders (TROs) are provided for by Rule 65.01 of the Minnesota Rules of Civil Procedure. They are typically requested without notice to the adverse party on an expedited basis.

2. Temporary Injunctions are provided for by Rule 65.02 of the Minnesota Rules of Civil Procedure. They may be granted following a noticed motion hearing where all parties have an opportunity to be heard.

3. A temporary injunction is an extraordinary remedy; its purpose is to preserve the status quo until adjudication of the case on its merits. *Haley v. Force*lle, 669 N.W.2d 48 (Minn. App. 2003).

4. Five factors are considered in determining whether a temporary injunction should be granted. 1) The nature of the relationships between the parties prior to the dispute; 2) the balance of relative harm to the parties; 3) the likelihood of success on the merits; 4) public policy considerations; and 5) the administrative burdens involved. *Dahlberg Bros., Inc. V. Ford Motor Co.,* 137 N.W.2d 314, 321-322 (Minn. 1965).

5. The party seeking an injunction must establish that legal remedies are inadequate and that an injunction must issue to prevent great and irreparable injury. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 92 (Minn. 1979). The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *Morse v. City of Waterville,* 458 N.W.2d 728, 729 (Minn.App. 1990), citing *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987); *Roberts v. Van Buren Public Schools,* 731 F.2d 523, 526 (8th Cir.1984).

6. Plaintiff has not established sufficient *Dahlberg* factors to warrant the issuance of a TRO or temporary injunction.

7. The parties were in an employment relationship for approximately one year prior to this dispute.  This relationship would not be affected by issuing or denying the requested TRO or temporary injunction and thus this factor does not weigh in favor of any party.

8. The balance of harms does not clearly favor Plaintiff based on the evidence currently in the record.  The injury claimed by Plaintiff is primarily economic.  There is insufficient evidence in the record of an alleged extraordinary circumstance or other support for the Court to find irreparable harm to the Plaintiff.  Loss of income and damage to reputation is insufficient to constitute irreparable injury and does not provide a basis for temporary injunctive relief because such a loss may later be recovered.  See *Miller v. Foley*, 317 N.W.2d 710, 713 (Minn. 1982). On the other hand, irreparable harm may be inferred from the breach of a restrictive covenant in an employment contract. *Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 552-553, 125 N.W.2d 844, 845 (1964). There is insufficient evidence in the record at this time which would rebut this inference. This factor favors denial of the request for a TRO or temporary injunction.

9. Given the current record, it is unclear whether Plaintiff's claims will prevail on the merits without additional evidence. Plaintiff agrees that she signed the Agreement with the restrictive covenants but claims that the non-compete restrictions are unenforceable because they are ambiguous, contradictory, and not supported by the requisite consideration. Defendant argues that the terms of the non-compete restrictions in the Agreement, signed by Plaintiff before her employment began, were conditions of her initial employment, were thus supported by consideration, and were for the protection of a legitimate business interest.  There appears to be legitimate disputed issues. Because there is insufficient evidence of irreparable injury necessary to warrant the extraordinary remedy of interim injunctive relief, it is not necessary to pre-judge the merits of Plaintiff's claims.

10. Defendant argues that Minnesota has a strong public policy of upholding valid contracts and enforcing them in accordance with the parties' expectations.  Plaintiff, on the other hand, argues that Minnesota encourages free and open competition and seeks to prevent any restraint on the ability of individuals to better themselves and their earning capacity. Given Plaintiff's claims, the public policy factor is neutral for the parties in this matter.

11. The relief requested does not create a significant administrative burden.  This factor is neutral.

12. The need for a temporary restraining order or temporary injunction is not supported by the current record.

13. Minnesota Rules of civil Procedure 26.02 establishes the methods, scope, and limits of discovery.  Because Plaintiff's have not persuaded the Court of irreparable harm, the request for expedited discovery is denied.

<u>ORDER</u>

1.  Plaintiff's motion for a temporary restraining order/temporary injunction is DENIED.

2.  Plaintiff's motion for expedited discovery is DENIED.

**BY THE COURT:**

Buytendorp, Nancy
2021.11.16
15:41:12 -06'00'

Nancy L. Buytendorp

District Court Judge

# Exhibit A-7

Filed in District Court
State of Minnesota
November 16, 2021

**STATE OF MINNESOTA**                          **DISTRICT COURT**
**COUNTY OF WINONA**                    **THIRD JUDICIAL DISTRICT**
_____          Court File No. 85-CV-21-1472

Shelia M. Dunn                                         **Civil:** Employment

                            Plaintiff,

v.                                            **SCHEDULING ORDER**

Associates in Psychiatry and Psychology,
P.A., Does 1-20

                            Defendants.
_____

        Based upon review of the Court File and any Informational Statements timely submitted, the Court now makes this Scheduling Order.

**1.        ALTERNATIVE DISPUTE RESOLUTION:** The parties shall discuss Alternative Dispute Resolution (ADR) alternatives.  **Within one month of the filing date of this Order**, the parties shall file a Joint ADR Proposal describing the method of ADR chosen by the parties, as well as specific procedures to be employed, including such issues as bearing of costs, timeliness, and the role of the Court, if any.  The ADR process must be completed within one week of the Pre-trial Conference date set forth herein.

**2.        JOINDER OF ADDITIONAL PARTIES:  January 6, 2022**, is the last day on which additional parties may be joined.

**3.        DISCOVERY DEADLINE:**  Discovery, including depositions, must be conducted in accordance with the governing rules and completed by **February 7, 2022**.  All examinations and evaluations relative to disputed issues must also be complete by that date, including Independent Medical Examinations, Independent Psychological Evaluations, and other similar procedures conducted pursuant to Rule 35 of the Minnesota Rules of Civil Procedure.

**4.        EXPERT DISCLOSURE:**  In addition to disclosures required by Rule 26 of the Minnesota Rules of Civil Procedure, all expert disclosures shall be made by **February 21, 2022** or, if the evidence is intended solely to contradict or rebut the evidence on the same subject matter identified by another party to specifically provide testimony in the case, within 30 days after disclosure made by the other party.

        a.   SUBSTANCE OF DISCLOSURE: The disclosure of any expert testimony shall be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

AMERICAN DISABILITY ACT: If you need a reasonable accommodation or assistance, please call (612) 430-4420.  If you cannot communicate by phone voice, our TDD number is (612) 439-3220.                              Page 1 of 2.

**5.     FORMAL DISCOVERY CONFERENCE:** No formal discovery conference will be held except upon motion, which must be served and filed early enough so that the discovery conference can be held prior to the discovery cut-off date set out in Paragraph Three herein.

**6.     MOTION DEADLINES: March 7, 2022**, is the last day on which a dispositive or non-dispositive motion may be heard, except as provided herein.

**7.     PRETRIAL CONFERENCE:** A Pretrial Settlement Conference is scheduled for **April 6, 2022 at 9:00 a.m.** at the Winona County Courthouse, Courtroom 3, 171 W 3rd St., Winona, Minnesota.

**8.     TRIAL:** This matter is scheduled for a jury trial on **April 25, 2022, at 9:00 a.m.** at the Winona County Courthouse, Courtroom 3, 171 W 3rd St., Winona, Minnesota. The parties have estimated that this matter will require three days of trial time.

**9.     NO LATER THAN March 25, 2022:**
   a. The parties shall file a Separate Statement of the Case; and

   b. Each party shall provide opposing parties and the Court with a witness list containing the names, addresses, telephone numbers of anticipated witnesses and with respect to each, a brief description of expected testimony, and an exhibit/display list containing brief descriptions of any exhibits expected to be offered and displays/graphics intended to be used.

   c. Each party shall serve opposing counsel and file with the court trial briefs, if any, proposed jury instructions, proposed special verdict forms, and any trial motions, including motions in limine.

**10.    AMENDMENTS:** This Scheduling Order may be amended upon motion for good cause shown. Any motion to extend any deadline contained in this Scheduling Order must be heard before the expiration of that deadline. Motions to amend and general questions regarding this Scheduling Order, together with any questions regarding pretrial and trial dates, should be addressed to Court Administration at 507-615-5183.

**11.    CONTINUANCES:** Requests for continuances shall be made by written request to the Court, with copies to all parties, or by stipulation signed by all parties. Stipulations for continuance are subject to the Court's approval.

**12.    SETTLEMENT NOTIFICATION:** If the case is settled or otherwise disposed of prior to trial, counsel shall immediately notify Court Administration, 507-615-5183.

**13.    NOTIFICATION OF ORDER:** The Court Administrator shall mail a copy of this Order to counsel of record for the parties, and to any party without counsel of record. Said mailing shall constitute due and proper notice of this Order for all purposes.

BY THE COURT:

Buytendorp, Nancy
2021.11.16
15:41:58 -06'00'

_____

Nancy L. Buytendorp
Judge of Minnesota District Court

AMERICAN DISABILITY ACT: If you need a reasonable accommodation or assistance, please call (612) 430-4420. If you cannot communicate by phone voice, our TDD number is (612) 439-3220.                    Page 2 of 2.

# Exhibit A-8

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF WINONA                            THIRD JUDICIAL DISTRICT

---

Sheila M. Dunn                              Court No. 85-CV-21-1472

     Plaintiff,                             Case Type: Employment

v.

Associates in Psychiatry and
Psychology, P.A., Does 1-20

     Defendants.

---

The parties stipulate that the court may enter the following protective order:

1.    **Definitions.**  As used in this protective order:

    (a)    "attorney" means an attorney who has appeared in this action;

    (b)    "confidential document" documents, as defined below, which are in the possession of a designating party that believes in good faith that such documents are entitled to confidential treatment under applicable law;'

    (c)    "confidential information" means information, as defined below, which is in the possession of a designating party that believes in good faith that such information are entitled to confidential treatment under applicable law.

    (d)    "confidential testimony" means any testimony, as defined below, that a designating party believes in good faith to be entitled to confidential treatment under applicable law;

    (e)    to "destroy" electronically stored information means to delete from all databases, applications, and file systems so that the information is not accessible without the use of specialized tools or techniques such as those typically used by a forensic expert;

    (f)    "document" means information disclosed or produced in discovery, including at a deposition;

    (g)    "information" means any factual knowledge held by a person or recorded in any way including within a document whether or not that document is also, in whole or in part, confidential under the terms of this protective order;

(h)     "testimony" means any statements made in this matter at an oral deposition or by way of deposition by written examination;

(i)     "notice" or "notify" means written notice;

(j)     "party" means a party to this action; and

(k)     "protected document" means a document protected by a privilege or the work-product doctrine.

(l)     "confidential documents" do not include documents to which a non-designating party had access prior to the commencement of this action; and

(m)     "confidential information" does not include information to which a non-designating party had access prior to the commencement of this action.

2.     **Designating a Document, Information, or Testimony as Confidential.**

(a)     A party or non-party disclosing or producing a document may designate it as confidential if the party or non-party in good faith believes that it contains confidential or information.

(b)     A party or non-party may designate a document, information, or testimony as confidential by conspicuously marking the first page with the word "confidential."

(c)     Deposition testimony may be designated as confidential:

(1)     on the record at the deposition; or

(2)     within 10 days after the availability of the deposition transcript, by promptly notifying the parties and those who were present at the deposition.

(d)     If a witness is expected to testify as to confidential information, a party or non-party may request that the witness's deposition be taken in the presence of only those persons entitled to receive confidential documents.

3.     **Who May Receive a Confidential Document, Information, or Testimony.**

(a)     A confidential document, information, or testimony may be used only in this action.

(b)     No person receiving a confidential document, information, or testimony may reveal it, except to:

(1)     the court and its staff;

(2)     an attorney or an attorney's partner, associate, or staff;

(3)     a person shown on the face of the confidential document to have authored or received it;

(4)     a court reporter or videographer retained in connection with this action;

(5)     a party (subject to paragraph 3(c)); and

(6)     any person who:

(A)     is retained to assist a party or attorney with this action; and

(B)     signs an affirmation that contains the person's name, address, employer, and title, and that is in substantially in the form attached hereto as Exhibit A.

(c)     If a confidential document is revealed to someone not entitled to receive it, the parties must make reasonable efforts to retrieve it.

4.     **Serving This Protective Order on a Non-Party.**  A party serving a subpoena on a non-party must simultaneously serve a copy of this protective order.

5.     **Correcting an Error in Designation.** A party or non-party who discloses or produces a confidential document not designated as confidential may, within 7 days after discovering the error, provide notice of the error and produce a copy of the document designated as confidential.

6.     **Use of a Confidential Document in Court.**

(a)     Filing.  This protective order does not authorize the filing of any document under seal but does authorize a party to file documents as "confidential" pursuant to General Rule of Practice 11.04. A document can only be filed under seal in accordance with the Rules of General Practice. A party intending to file another party's or a non-party's confidential document must promptly notify the other party or the non-party so that the other party or the non-party may seek relief from the court. If practicable under the circumstance, the filing party must notify the disclosing party of the intent to file confidentially prior to the filing. If a non-filing party disputes the appropriateness of filing a document confidentially, that party may notify the filing party, and the parties shall meet and confer in a good faith attempt to resolve the issue. If the parties cannot agree whether the document should be filed confidentially, either party may request a ruling from the court formally or pursuant to General Rule of Practice 115.04(d).

(b)     Presentation at a hearing or trial.  A party intending to present another party's or a non-party's confidential document, information, or testimony at a hearing or trial must promptly notify the other party or the non-party so that the other party or the non-party may seek relief from the court prior to the use of the confidential document, information, or testimony. If a party fails to identify the confidential document, information, or testimony prior to its use, the disclosing party may request a sidebar to address such use.

If a party or non-party has notice of a hearing or trial and does not appear, that party or non-party will be deemed to have waived his, her, or its objection to the use of the document, information, or testimony.

7.   **Changing a Confidential Confidentiality Designation.**

(a)   Documents, information, or testimony disclosed or produced by a party.  A confidential document, information, or testimony disclosed or produced by a party remains confidential unless the parties agree to change its designation or the court orders otherwise.

(b)   Documents, information, or testimony produced by a non-party.  A confidential document, information, or testimony produced by a non-party remains confidential unless the non-party agrees to change its designation or the court orders otherwise after providing an opportunity for the non-party to be heard.

(c)   Changing a designation by court order. A party who cannot obtain agreement to change a designation may move the court for an order changing the designation. If the motion affects a document produced by a non-party then, with respect to the motion, that non-party is entitled to the same notice and opportunity to be heard as a party. The party or non-party who designated a document as confidential must show that the designation satisfies Minn. R. Civ. P. 26.03.

8.   **Handling a Confidential Document after Termination of Litigation.**

(a)   Within 60 days after the termination of this action (including any appeals), each party must:

(1)   return or destroy all confidential documents; and

(2)   notify the disclosing or producing party that it has returned or destroyed all confidential documents within the 60-day period.

(b)   Notwithstanding paragraph 8(a), each attorney may retain a copy of any confidential document submitted to the court.

9.   **Inadvertent Disclosure or Production to a Party of a Protected Document.**

(a)   Notice.

(1)   A party or non-party who discovers that it has inadvertently disclosed or produced a protected document must promptly notify the receiving party and describe the basis of the claim of privilege or protection.  If the party or non-party provides such notice and description, the privilege or protection is not waived.

(2)   A party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party or non-party.

(b)   Handling of Protected Document. A party who is notified or discovers that it may have received a protected document must comply with Minn. R. Civ. P. 26.02(f)(2).

10. **Security Precautions and Data Breaches.**

(a)     Each party must make reasonable efforts to protect the confidentiality of any confidential document disclosed or produced to that party.

(b)     A party who learns of a breach of confidentiality must promptly notify the disclosing or producing party of the scope and nature of that breach and make reasonable efforts to remedy the breach.

11. **Survival of Obligations.** The obligations imposed by this protective order survive the termination of this action.

AGREED:

**GODWIN DOLD**

Dated: January 28, 2022

/s/James A. Godwin
James A. Godwin (MN #392020)
Rick A. Dold (MN #394847)
300 1st Avenue NW, Suite 306
Rochester, MN  55901-2830
Telephone: 507-218-8383
james@godwindold.com
rick@godwindold.com

Attorneys for Plaintiff Sheila M. Dunn

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/Benjamin R. Kinney
Suzanne L. Jones (MN #389345)
Benjamin R. Kinney (MN # 395769)
Gordon Rees Scully Mansukhani LLP
100 S. 5th Street, Suite 1900
Minneapolis, MN 55402
Telephone: 612-351-5969
sljones@grsm.com
bkinney@grsm.com

Attorneys for Defendant Associates
in Psychiatry and Psychology, P.A.

02/01/2022 09:55:25 AM

**SO ORDERED:**

Hon. Nancy L. Buytendorp
Judge of Minnesota District Judge

# EXHIBIT A.

## ATTESTATION TO BE BOUND BY CONFIDENTIALITY

I, _____, residing at _____, in _____,

\_\_\_\_, do hereby attest that I  have read, and agree to be bound by, the protective order in the case

captioned: *Sheila M. Dunn v. Associates in Psychiatry and Psychology, P.A., Does 1-20*, pending

in Minnesota State District Court for Winona County. As soon as my work in connection with

that action has ended, but not later than 30 days after the termination of that action (including

any appeals), I will return or destroy any confidential document that I received, any copy of or

excerpt from a confidential document, and any notes or other document that contains information

from a confidential document.

Dated:_____.          _____

Signature

_____

Typed Name

1249292/64483358v.1

# Exhibit A-9

Filed in District Court
State of Minnesota

February 28, 2022

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF WINONA                              THIRD JUDICIAL DISTRICT

---

Sheila M. Dunn,                                    Case No. 85-CV-21-1472

                        Plaintiff,

v.                                               **ORDER ON PLAINTIFF'S MOTION
                                              FOR LEAVE TO AMEND COMPLAINT**

Associates in Psychiatry and Psychology,
P.A. and Does 1–20,

                        Defendants.

---

       The above-entitled matter came before the undersigned Judge of District Court on February 22, 2022, upon Plaintiff Sheila M. Dunn's motion for leave to amend her complaint. Plaintiff was represented by Attorney Christopher K. White and Attorney James A. Godwin. Defendant Associates in Psychiatry and Psychology, P.A. was represented by Attorney Jeremy J. Thompson, Attorney Suzanne L. Jones, and Attorney Benjamin R. Kinney. The Court heard oral arguments and written arguments were filed with the Court prior to the hearing. The Court took the matter under advisement on February 22, 2022.

       Based upon Counsel's arguments presented at the hearing, the pleadings, written submissions, and upon all the files, records, and proceedings herein, being duly advised in the premises, the Court makes the following:

<b>ORDER</b>

1. Plaintiff's motion to amend the complaint is **GRANTED**.

1

2. Within five days from the issuance of notice of filing of this order, Plaintiff shall serve and file the Amended Complaint, and upon such service and filing it shall be Plaintiff's operative pleading.

3. Defendant's motion to extend deadlines in the scheduling order is GRANTED.

4. The new scheduling order is attached and incorporated herein.

**BY THE COURT:**

Buytendorp, Nancy
2022.02.28
12:49:06 -06'00'

_____

Nancy L. Buytendorp

Judge of District Court

## MEMORANDUM

Sheila M. Dunn (herein referred to as "Plaintiff") filed a Complaint on September 16, 2021, in Winona County District Court alleging ten (10) claims against Associates in Psychiatry and Psychology, P.A. (herein referred to as "Defendant") and Does 1-20.

Plaintiff moved the Court on February 1, 2022, for leave to amend her complaint to include the following three additional claims:  Violation of the Federal Fair Labor Standards Act; Failure to Timely Pay Wages; and Violation of the Minnesota Human Rights Act.  Defendant opposes Plaintiff's motion.

## LEGAL ANALYSIS

### I.     Plaintiff's motion to amend does not substantially delay the proceedings in this case.

"Delay alone is not a reason in and of itself to deny leave to amend." *Envall v. Indep. Sch. Dist. No.* 704, 399 N.W.2d 593, 597 (Minn. Ct. App. 1987). In this case, the original complaint was brought in mid-September of 2021, just five (5) months ago. Beyond that, both parties are currently requesting an extension for discovery, although they differ on length and the reasons for which they are requesting the extension.  The request for extension has been granted by this Court. The caselaw cited by the defense involves a significantly longer period of time between the original complaint and the motion to amend the complaint. Unlike the Plaintiff in the *Johnson v. Opportunity Workshop, Inc.* case cited by the defense, Plaintiff in this case did not bring this motion in a late stage of the proceedings since both parties agreed to extend discovery. Further, it has only been a few months since the original complaint was brought. C5-97-2299, 1998 WL 328385, at *1 (Minn. Ct. App. June 23, 1998). Defendant has not demonstrated that granting Plaintiff's motion would create a significant delay resulting in harm or prejudice to Defendant.

3

The fact that Defendant may seek to change venues based on the FLSA claim does not mean Defendant must change venue; Defendant merely has that option. See *Breuer v. Jim's Concrete of Brevard, Inc.* 538 U.S. 691, 694, 123 S. Ct. 1882, 1883 (2003). Even so, the delay from a change of venue likely would not cause a substantial enough delay which would prejudice the Defendant.

## II.     Plaintiff's motion to amend, even if there was delay, would not unfairly prejudice Defendant.

In order for the Court to deny a motion to amend based on delay, said delay must have resulted in unfair prejudice to the party opposing amendment. *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Sanders v. Clemco Indus*., 823 F.2d 214, 217 (8th Cir. 1987). "The burden of proof of prejudice is on the party opposing the amendment." *Id.* The "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Dennis v. Dillard Dep't Stores, Inc.,* 207 F.3d 523, 526 (8th Cir. 2000) (citing *United States v. Continental Ill. Nat'l Bank & Trust Co.,* 889 F.2d 1248, 1255 (2d Cir. 1989)). "Ordinarily, unless a party opposing an amendment can establish some prejudice other than merely having to defend against an additional claim or defense, an amendment will be allowed." *Envall*, 399 N.W.2d at 597.

Here, the defense has not stated what prejudice Defendant would incur if Plaintiff's motion to amend her complaint was granted. Delay alone would not be enough to unfairly prejudice Defendant. *See Roberson*, 241 F.3d at 995. The need for more discovery alone would not force the Court's hand to deny the motion to amend. *See Dennis,* 207 F.3d at 526.

## III.     The Proposed Amendments sufficiently plead claims for which relief can be granted.

4

The proposed amendment sufficiently pleads a claim under the Fair Labor Standards Act. The allegation that Defendant failed to pay overtime wages satisfies the requirements for pleading a claim under the FLSA.  The proposed amendment asserting a claim that Defendant violated Minnesota Statute §181 is not duplicative of other claims in the complaint. Finally, Plaintiff's claim under the MHRA gives Defendant fair notice of the incident giving rise to the suit with sufficient clarity to disclose Plaintiff's theory upon which her claim for relief is based. Absolute specificity in pleadings is not necessary; rather, "information sufficient to fairly notify the opposing party of the claim against it is satisfactory." *Hansen v. Robert Half Int'l, Inc*., 813 N.W.2d 906, 917-18. (Minn. 2012).

## CONCLUSION

There is insufficient evidence that granting Plaintiff's Motion to Amend the Complaint in this matter will prejudice Defendant or cause a significant delay to the proceedings. Further, additional claims are sufficiently pled. Therefore, Plaintiff's motion is granted.

**NLB**

**STATE OF MINNESOTA**
**COUNTY OF WINONA**
_____

**DISTRICT COURT**
**THIRD JUDICIAL DISTRICT**
Court File No. 85-CV-21-1472

Shelia M. Dunn

Plaintiff,

**Civil:** Employment

v.

Associates in Psychiatry and Psychology,
P.A., Does 1-20

Defendants.
_____

**AMENDED**

**SCHEDULING ORDER**

Based upon review of the Court File and any Informational Statements timely submitted, the Court now makes this Scheduling Order.

**1.     ALTERNATIVE DISPUTE RESOLUTION:** The parties shall discuss Alternative Dispute Resolution (ADR) alternatives.  **Within one month of the filing date of this Order**, the parties shall file a Joint ADR Proposal describing the method of ADR chosen by the parties, as well as specific procedures to be employed, including such issues as bearing of costs, timeliness, and the role of the Court, if any.  The ADR process must be completed within one week of the Pre-trial Conference date set forth herein.

**2.     JOINDER OF ADDITIONAL PARTIES:**  **April 6, 2022**, is the last day on which additional parties may be joined.

**3.     DISCOVERY DEADLINE:**  Discovery, including depositions, must be conducted in accordance with the governing rules and completed by **May 7, 2022**.  All examinations and evaluations relative to disputed issues must also be complete by that date, including Independent Medical Examinations, Independent Psychological Evaluations, and other similar procedures conducted pursuant to Rule 35 of the Minnesota Rules of Civil Procedure.

**4.     EXPERT DISCLOSURE:**  In addition to disclosures required by Rule 26 of the Minnesota Rules of Civil Procedure, all expert disclosures shall be made by **May 20, 2022** or, if the evidence is intended solely to contradict or rebut the evidence on the same subject matter identified by another party to specifically provide testimony in the case, within 30 days after disclosure made by the other party.

     a.   SUBSTANCE OF DISCLOSURE: The disclosure of any expert testimony shall be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

6

**5.     FORMAL DISCOVERY CONFERENCE:** No formal discovery conference will be held except upon motion, which must be served and filed early enough so that the discovery conference can be held prior to the discovery cut-off date set out in Paragraph Three herein.

**6.     MOTION DEADLINES: July 25, 2022**, is the last day on which a dispositive or non-dispositive motion may be heard, except as provided herein.

**7.     PRETRIAL CONFERENCE:**  A Pretrial Settlement Conference is scheduled for **July 25, 2022, at 9:00 a.m.** at the Winona County Courthouse, Courtroom 1, 171 W 3rd St., Winona, Minnesota.

**8.     TRIAL:**  This matter is scheduled for a jury trial on **August 22, 2022, at 9:00 a.m.** at the Winona County Courthouse, Courtroom 1, 171 W 3rd St., Winona, Minnesota.  The parties have estimated that this matter will require three days of trial time.

**9.     NO LATER THAN June 24, 2022:**

    a.   The parties shall file a Separate Statement of the Case; and

    b.   Each party shall provide opposing parties and the Court with a witness list containing the names, addresses, telephone numbers of anticipated witnesses and with respect to each, a brief description of expected testimony, and an exhibit/display list containing brief descriptions of any exhibits expected to be offered and displays/graphics intended to be used.

    c.   Each party shall serve opposing counsel and file with the court trial briefs, if any, proposed jury instructions, proposed special verdict forms, and any trial motions, including motions in limine.

**10.     AMENDMENTS:**  This Scheduling Order may be amended upon motion for good cause shown.  Any motion to extend any deadline contained in this Scheduling Order must be heard before the expiration of that deadline.  Motions to amend and general questions regarding this Scheduling Order, together with any questions regarding pretrial and trial dates, should be addressed to Court Administration at 507-615-5183.

**11.     CONTINUANCES:** Requests for continuances shall be made by written request to the Court, with copies to all parties, or by stipulation signed by all parties.  Stipulations for continuance are subject to the Court's approval.

**12.     SETTLEMENT NOTIFICATION:**  If the case is settled or otherwise disposed of prior to trial, counsel shall immediately notify Court Administration, 507-615-5183.

**13.     NOTIFICATION OF ORDER:**  The Court Administrator shall mail a copy of this Order to counsel of record for the parties, and to any party without counsel of record.  Said mailing shall constitute due and proper notice of this Order for all purposes.

BY THE COURT:                    Buytendorp, Nancy
                                                 2022.02.28
_____     12:49:24 -06'00'
Nancy L. Buytendorp
Judge of Minnesota District Court