## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SHEILA M. DUNN<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ASSOCIATES IN PSYCHIATRY AND PSYCHOLOGY, P.A. AND DOES 1-20<br><br>　　　　　Defendants.<br><br>ASSOCIATES IN PSYCHIATRY AND PSYCHOLOGY, P.A.<br><br>　　　　　Counter-Plaintiff,<br><br>　v.<br><br>SHEILA M. DUNN, SYNERGY FAMILY PSYCHIATRIC SERVICES, LLC, AND RIVER CITY PSYCHIATRIC SERVICES, LLC<br><br>　　　　　Counter-Defendants. | Case No. 0:22-cv-00615-NEB-JFD |

### DEFENDANT ASSOCIATES IN PSYCHIATRY AND PSYCHOLOGY, P.A.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND HER COMPLAINT

Defendant Associates in Psychiatric and Psychology, P.A.'s (hereinafter "APP"), through its attorneys, and for its Response in Opposition to Plaintiff's Motion to Amend her Complaint, states as follows:

### INTRODUCTION

The Plaintiff seeks to amend her Complaint for a second time to name two new APP

1

defendants, assert a new cause of action, and attempt to clean up various factual allegations asserted in the First Amended Complaint. Plaintiff's request is untimely and is ultimately futile. The Court should deny her request.

This lawsuit has been pending since September 16, 2021. In the past eleven months of this lawsuit's progress, the parties have exchanged Initial Disclosures, exchanged written discovery, produced documents and completed the depositions of Plaintiff Dunn and APP's corporate designee, Seth Franz. Significantly, the two new APP parties that Plaintiff seeks to add to her Complaint were disclosed in APP's Initial Disclosures served on January 4, 2022 (as to Seth Franz), identified in APP's document production, served on February 2, 2022 (as to both), and identified during the deposition of APP's corporate designee, taken on March 4, 2022 (as to both). Based on that exchange of information, the Plaintiff has been aware of the purported "bases" for her proposed amendments for nearly five months. In those five months, the Plaintiff has already amended her Complaint once after substantive motion practice on her proposed amendments.

If Plaintiff wished to include new APP parties to the litigation, she had the opportunity and should have done so at that time. Rather than do so, however, Plaintiff has now waited until there has been additional substantive motion practice on APP's third-party claims. There is no legitimate reason why Plaintiff failed to include the additional parties in her First Amended Complaint, nor is there a legitimate reason why she has waited nearly five months to do so now. It appears that Plaintiff is intentionally litigating in a piecemeal manner in an effort to drive up APP's litigation costs and, ultimately, attempt to hold APP hostage for a favorable settlement.

Furthermore, the Plaintiff's request to add new APP parties to the lawsuit one year after commencing this matter is prejudicial to not only APP but also to the newly proposed Defendants.

Finally, regardless of the delay and the prejudice, Plaintiff's proposed amendments are futile because proposed defendants Seth Franz and Dr. Priyanka Rao are not proper parties. For one thing, this Court has no personal jurisdiction over Mr. Franz, who is admittedly a citizen resident of Illinois, not Minnesota. Furthermore, neither Mr. Franz nor Dr. Rao are "employers" subject to personal liability under the FLSA and MFLSA. Their addition to this matter would swiftly be met with motions to dismiss. For all of these reasons, the Plaintiff's Motion to Amend is properly denied.

## **PROCEDURAL POSTURE & BACKGROUND**

Plaintiff Sheila Dunn commenced this action against APP and Does 1-20 on September 16, 2021. Plaintiff's initial Complaint asserted 10 claims against APP:

- Count I – Declaratory Relief;
- Count II – Breach of Contract;
- Count III – Breach of the Covenant of Good Faith & Fair Dealing;
- Count IV – Violation of MN Fair Labor Standards Act;
- Count V – Violation of MN Payment of Wages Act;
- Count VI – Violation of the MN Wage Theft Prevention Act;
- Count VII – Unjust Enrichment;
- Count VIII – Quantum Meruit;

3

- Count IX – Wrongful Termination; and

- Count X – Failure to Provide Personnel Record.

In support of Count I – Declaratory Relief, Plaintiff sought a declaration that the restrictive covenants in her employment agreement with APP were not enforceable. (Complaint, ¶ 75).

In support of Count II – Breach of Contract, Plaintiff claimed that APP breached the Employment Agreement by "failing to pay Ms. Dunn's wages at the agreed upon rate and failure to properly advise patients of the end to Ms. Dunn's employment." (*Id.*, ¶ 79).

In support of Count III – Breach of the Covenant of Good Faith & Fair Dealing, Plaintiff alleged that APP "refus[ed] to notify patients of Ms. Dunn's departure, as required by the contract, then faulting her for the resulting patient confusion"; "intentionally miscalculated Ms. Dunn's compensation"; and "failed—and continues to fail—to provide any support for its calculations of Ms. Dunn's compensation." (*Id.*, ¶¶ 84-86).

In support of Count IV – Violation of MN Fair Labor Standards Act, Plaintiff claimed that "Defendants failed to compensate Ms. Dunn on an hourly wage basis with a premium for hours worked in excess of 48 in a workweek." (*Id.*, ¶ 92).

In support of Count V – Violation of MN Payment of Wages Act, Plaintiff asserted that "APP has failed to pay Ms. Dunn all of her earned wages despite receiving a written demand." (*Id.*, ¶ 98).

In support of Count VI – Violation of the MN Wage Theft Prevention Act, Plaintiff alleged that APP failed to provide required notice, that her earnings statements do not comply with the law, that APP did not keep required records and that APP has refused to

pay Plaintiff as required by the statute.  (*Id.*, ¶¶ 103-118).

In support of Count VII – Unjust Enrichment, Plaintiff claimed that "Defendants have been unjustly enriched through their interests in APP's profits by retaining wages earned by Ms. Dunn."  (*Id.*, ¶ 122).

In support of Count VIII – Quantum Meruit, Plaintiff asserted that she received no payment for her labor that exceeded the compensation she received.  (*Id.*, ¶¶ 128-142).

In support of Count IX – Wrongful Termination, Plaintiff alleged that "APP's termination of Ms. Dunn's employment was motivated at least in part by her complaints of improper billing and failure to account for and pay her compensation."  (*Id.*, ¶ 138).

Finally, Plaintiff claimed in support of Count X – Failure to Provide Personnel Record that she incurred damages and attorney fees as a result of "APP's refusal to provide copies of Ms. Dunn's personnel records."  (*Id.*, ¶ 143).

Discovery in this case has proceeded along the following timeline:

- November 24, 2021 - APP served its first set of interrogatories, requests for production, and requests to admit upon Plaintiff Dunn;

- January 3, 2022 - Plaintiff Dunn responded to APP's requests for production and requests to admit;

- January 3, 2022 – Plaintiff Dunn served her Initial Disclosures;

- January 3, 2022 – Plaintiff Dunn served her first set of interrogatories, requests for production, and requests to admit upon APP;

- January 4, 2022 – APP served its Initial Disclosures;

- January 12, 2022 – APP and Plaintiff Dunn appeared for an informal telephone conference before State Court Judge Nancy Buytendorp regarding Plaintiff Dunn's failure to respond to APP's interrogatories;

- February 5, 2022 – Plaintiff Dunn responded to APP's interrogatories;

- February 25, 2022 – APP deposed Plaintiff Dunn;

- March 4, 2022 – Plaintiff Dunn deposed APP corporate designee, Seth Franz;

- **March 8, 2022 – Plaintiff Dunn sent APP a letter indicating her intention to name Seth Franz and Priyanka Rao as individual defendants** (Exhibit A to the Declaration of Ben Kinney)**;**

- **March 9, 2022 – APP sent Plaintiff Dunn a letter indicating that it would not consent to Plaintiff Dunn's further amendment to name Seth Franz and Priyanka Rao as individual defendants** (Exhibit B to the Declaration of Ben Kinney); and

- August 4, 2022 – APP served its first set of interrogatories, requests for production, and requests to admit upon Synergy.

Following the deposition of APP's corporate designee, Seth Franz, on March 4, 2022, Plaintiff Dunn filed her First Amended Complaint. Plaintiff Dunn's First Amended Complaint retained her ten previously asserted claims and added three additional claims:

- Count XI – Violation of the Federal Fair Labor Standards Act ("FLSA");

- Count XII – Failure to Timely Pay Wages under Minn. Stat. § 181.101; and

- Count XII – Violation of the Minnesota Human Rights Act ("MHRA").

In support of her claim under the FLSA (Count XI), Plaintiff claims that she is a non-exempt covered employee under 29 U.S.C. § 203(e)(1) and that she has not been compensated properly for overtime hours as required by the FLSA. (First Amend. Compl., Doc. No. 1-1(A1), ¶¶ 161-163). Plaintiff also alleges that "Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA, 29

6

U.S.C. § 255(a)."  (*Id.*, ¶ 167).

In support of her claim for failure to Timely Pay Wages under Minn. Stat. § 181.101 (Count XII), Plaintiff alleges that APP "regularly failed to pay Ms. Dunn within 31 days of the date the wages were owned."  (*Id.*, ¶ 171).

In support of her claim for violation of the MHRA (Count XIII), Plaintiff alleges that she "informed APP that she had been recently diagnosed with ADHD," that "APP regarded Ms. Dunn as a person with a disability," and that APP "terminated Ms. Dunn at least in part as a result of its regarding her as a person with a disability." (*Id.*, ¶¶ 175-176).

The Plaintiff's lawsuit arises out of her employment with APP, which was memorialized by an Employment Agreement. *See id.*, ¶ 12.  Plaintiff claims that throughout her employment, APP failed to provide "accurate and complete earning statements" and that she "regularly worked without pay on days when she was supposed to be relieved of duty for time off or to attend training." *See id.*, ¶¶ 18 and 19. She also alleges that "APP refused to provide all relevant CPT codes and policies," despite her requests for them. *See id.*, ¶ 22. Plaintiff also alleges that she did not violate the restrictive covenants in the Employment Agreement, that she has not been provided her personnel records, has not been paid wages, was underpaid, and was wrongfully terminated for complaining that she needed additional information regarding how to code her billing properly. *See id.*, ¶¶ 42-50.

Plaintiff now seeks to add two APP individuals as defendants. Plaintiff's theory of liability for each proposed defendant rests on the argument that Mr. Franz and Dr. Rao qualify as "employers" pursuant to the FLSA and MFLSA and, as such, may be held

7

personally liable. *See* Motion at pp 7-12; Proposed Second Amended Complaint at 110 and 166.

As to Mr. Franz, Plaintiff's proposed Second Amended Complaint alleges:

> 80. Seth Franz is, and at all relevant times was, APP's CEO. As APP's CEO, he served on the leadership group that purportedly decided to terminate Ms. Dunn and told Ms. Dunn she had been terminated.
>
> 81. Mr. Franz also served, during at least some of the time that Ms. Dunn worked at APP, as APP's director of operations, human resources manager, and compliance officer. In these capacities, he calculated Ms. Dunn's wages, and arranged for her to be paid. He did that work in the interest of APP in relation to Ms. Dunn.

Plaintiff's Motion further alleges that Mr. Franz was the individual who terminated Plaintiff and that he allegedly made errors in calculating Plaintiff's pay. *See* Motion at pp 11-12.

As to Dr. Rao, Plaintiff's proposed Second Amended Complaint alleges:

> 82. Priyanka Rao is APP's owner and chief clinical officer. As APP's owner and chief clinical officer, she served on the leadership group that purportedly decided to terminate Ms. Dunn. She also had operational control over clinical activities such as the ones in which Ms. Dunn was engaged. She acted in the interest of APP in relation to Ms. Dunn.

Lastly, Plaintiff seeks to amend her Complaint to add an additional claim for promissory estoppel and to add or amend additional factual allegations.

Not only do the Plaintiff's proposed addition of two new APP defendants and addition of a new claim delay the proceedings, but they result in substantial prejudice to the proposed new parties, and are otherwise futile. Plaintiff's Motion to Amend is therefore properly denied.

## **ARGUMENT**

8

I. **Legal standard.**

Though Federal Rule of Civil Procedure 15 states that a court should freely grant leave to amend when justice so requires, doing so is not a mill-run request. In limiting Rule 15, the United States Supreme Court has stated that leave to amend should only be granted:

> [i]n the absence of any apparent […] undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing part by virtue of allowance of the amendment, futility of amendment, etc.

*White Consol. Indus., Inc. v. Waterhouse,* 158 F.R.D. 429, 433 (D. Minn. 1994) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). There are also other factors the court may consider in deciding whether an amendment should be allowed, such as the stage of the proceedings. *Smith v. RW's Bierstube, Inc.*, No. 17-cv-1866 (PJS/HB), 2018 WL 8754184, at *7 (D. Minn. Jan. 12, 2018) ("Undue delay does occur, however, when a party waits 'until the eleventh hour of its case' to file its motion to amend.") (citation omitted). In the face of undue delay, dilatory motive, and futility, courts should deny leave to amend. *See White Consol. Indus., Inc.,* 158 F.R.D. 429, 433 (D. Minn. 1994).

II. **Plaintiff's proposed amendments are futile.**

An amendment is futile if it fails to create claims that would withstand a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Magee v. Trustees of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1067 (D. Minn. 2013), aff'd sub nom. *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532 (8th Cir. 2014).

  A. **This Court does not have personal jurisdiction over proposed defendant Seth Franz.**

9

As a threshold matter, this Court does not have personal jurisdiction over Seth Franz, a resident citizen of the State of Illinois. *See* Proposed Second Amended Complaint at ¶ 3 ("Defendant Seth Franz is a natural person who, upon information and belief, resides in Oak Park, Illinois."); *see also* Declaration of Seth Franz, ¶ 2. "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). However, Plaintiff bears the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Wells Dairy*, 607 F.3d at 518. "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id*.

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992)). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir.1998) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Id.* (citing *Northrup King,* 51 F.3d at 1387). The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir.1995). When analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn.1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). It is essential in each case that the defendant has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

Here, without any supporting facts, Plaintiff makes a singular, conclusory statement that this Court has personal jurisdiction over Defendant Franz because "he transacts

11

business within the state." *Id.* at ¶ 10. However, Plaintiff is completely silent as to what business Mr. Franz allegedly transacts in Minnesota. It is not alleged that Mr. Franz has any ownership interest in APP. *See* Motion at p. 6 (alleging that Priyanka Rao is the owner of APP). At best, it is alleged that Mr. Franz is an employee of a company that transacts business in Minnesota. However, there is no allegation that Mr. Franz conducts any of his work activities within Minnesota or that he has ever so much as stepped foot in Minnesota. But even if such allegations existed (which they don't in the proposed amended pleading), "[t]he law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *Arkansas Rice Growers Co-op. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986) (citing e.g., *Escude Cruze v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir.1980); *Forsythe v. Overmyer*, 576 F.2d 779, 783–84 (9th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978)).

Because Mr. Franz is a foreign employee, who conducts his work in a foreign jurisdiction, and whose only contacts with the forum state (if alleged at all) arise out of his performance of corporate duties, this Court does not have personal jurisdiction over Mr. Franz. Plaintiff's proposed amendment to add him as a party is futile.

### B. Neither Seth Franz nor Priyanka Rao are properly considered an "employer" under the FLSA or MFLSA.

Plaintiff's proposed amendments are further futile because neither Seth Franz nor Priyanka Rao are "employers" under the FLSA or MFLSA. In determining whether an individual or entity is an "employer" for purposes of the FLSA, courts apply the "economic

realities test" and consider whether the alleged employer: (1) possessed power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined rate and method of payment, and (4) maintained employment records. *See* Fair Labor Standards Act of 1938, § 3(d), 29 U.S.C.A. § 203(d). The economic realities test is not mechanical or formal in its application. Instead, "it is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir.1998); *see also Catani v. Chiodi*, 2001 WL 920025, at *3 (D.Minn. Aug. 13, 2001). Importantly, the showing of operational control requires a relation to the complaining employee. *See Hembree v. Mid-Continent Transp., Inc.*, No. 08-6094-CV-SJ-HFS, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011) (*citing Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir.2008)) ("[to be considered an employer would] require 'operational control of significant aspects of ... day-to-day functions, including compensation of employees or other matters *in relation to an employee*.'") (citations omitted) (emphasis added).

As to Dr. Rao, Plaintiff makes no allegation that she had any operational control over any aspect of APP in relation to Plaintiff specifically. Furthermore, Plaintiff does not even generally allege that Dr. Rao (1) possessed power to hire and fire employees,[1] (2) supervised and controlled employee work schedules or conditions of employment, (3)

---

[1] To the extent that Plaintiff makes vague suggestions that Dr. Rao possessed the power to hire or fire Plaintiff because she was at a meeting wherein the decision to terminate Plaintiff was made, such a suggestion is rebutted by Plaintiff's own exhibit to her Motion. During his deposition, Seth Franz stated, "It was my decision. It was my responsibility to terminate Sheila." *See* Motion, Exhibit A p. 191:20.

determined rate and method of payment, and (4) maintained employment records. Instead, Plaintiff relies completely on the fact that Dr. Rao is the owner of APP and that she holds an employee position as Chief Clinical Officer. *See* Motion at p. 12. Ownership alone does not result in Dr. Rao being an "employer" for purposes of the FLSA and MFLSA. *See Hembree v. Mid-Continent Transp., Inc.*, No. 08-6094-CV-SJ-HFS, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011). ("Defendant's 50% ownership interest is not irrelevant, but clearly not dispositive. Rather, it is necessary to look to the record as to the substantiality of his actual participation in day-to-day operations and his connection, if any, with employee management or compensation."). Furthermore, Plaintiff has not alleged any connection at all between her and Dr. Rao in her position as Chief Clinical Officer, let alone any operational control, management, or control over Plaintiff's compensation.

Therefore, Plaintiff has not alleged *any* facts that would weigh in her favor under the "economic realities test" such that her attempt to name Dr. Rao individually is futile.

As to Mr. Franz, Plaintiff again cannot satisfy the elements of the economic realities test. Here, Plaintiff only alleges that Mr. Franz was the employee who terminated her employment with APP and allegedly made an error in calculating Plaintiff's pay. Plaintiff asserts no allegations whatsoever that Mr. Franz supervised or controlled her work schedule or conditions of employment or whether he maintained her employment records. But even the alleged error in calculating Plaintiff's pay is not evidence of Mr. Franz's determination of Plaintiff's rate or method of pay. In fact, Plaintiff's rate and method of pay was set out in Plaintiff's employment agreement with *APP* and there is no evidence that Mr. Franz determined or negotiated that agreement.

Again, Plaintiff has not alleged *any* facts that would weigh in her favor for three out of four factors of the "economic realities test" such that her attempt to name Mr. Franz individually is futile under a totality of the circumstances. *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir.1998).

### C. A claim for promissory estoppel is futile because both parties agree that there is a written employment agreement.

Through her Second Amended Complaint, Plaintiff also seeks to assert an alternate claim for promissory estoppel, despite the fact that there is no dispute that a written employment agreement exists between Plaintiff and APP. *See* Motion at p. 12 ("The Court should grant Ms. Dunn leave to plead a promissory estoppel claim in the alternative to her breach of contract claim."). Despite Plaintiff's assertion, APP has never suggested that it may take the position that Plaintiff's employment agreement with APP is unenforceable. Thus, both parties agree that a written contract controls and a claim for promissory estoppel is futile. *See* Proposed Second Amended Complaint, ¶ 17 (alleging the existence of a written employment agreement); *see also Banbury v. Omnitrition Int'l*, 533 N.W.2d 876, 881 (Minn.App.1995) ("As a general rule, then, promissory estoppel is not available where a contract exists.").

### III. Granting leave to file the proposed Second Amended Complaint will cause substantial delay and prejudice to APP, as well as Seth Franz and Priyanka Rao.

Here, substantial delay and prejudice will result from the Plaintiff's *second* proposed Amended Complaint. Federal courts may hold that delaying the filing of motions to amend to the last day the scheduling order permits constitutes undue delay when parties

knew of the information that formed the basis for the amendment months in advance. *See In re EpiPen Direct Purchaser Litig.*, No. 20CV00827ECTJFD, 2021 WL 4892231, at *3 (D. Minn. Oct. 20, 2021) (citing *Neelon v. Krueger*, 303 F.R.D. 433, 434 (D. Mass. 2014)) (denying plaintiff's motion to amend filed on the last day under the scheduling order where the case had been litigated for 22 months, only six weeks of discovery remained, and the party knew the information nine months prior).

The instant case has been actively litigated for eleven months and Plaintiff had knowledge of the bases for her proposed amendment for five months prior to filing her Motion to Amend. During those five months that Plaintiff had knowledge of the new facts that give rise to her proposed amendments, she already filed a First Amended Complaint. Furthermore, her Motion was filed on the absolute last day permitted under the Court's Pretrial Scheduling Order. Plaintiff's delay here is unjustified and her Motion should be denied.

Furthermore, though Plaintiff argues that there is no prejudice to her undue delay, she limits her analysis as the prejudice to Rule 15. However, in deciding questions of joinder under Rule 21, courts ordinarily consider basic principles such as fundamental fairness and judicial economy, whether an order under Rule 21 would prejudice any party or would result in undue delay and the threats of duplicitous litigation and inconsistent jury verdicts. Moore's Federal Practice § 21.02[4] (Matthew Bender 3d ed. 2003). Here, though Plaintiff has known the bases for her proposed amendments for at least five months, she chose to delay requesting joinder and in essence litigate the matter ex parte against Mr. Franz and Dr. Rao. Certainly, neither individual has had their interests represented in this

litigation. The result of adding them at this late stage would require that the instant case start anew for the sole reason that Plaintiff waited to make this request.

Plaintiff's delay in making the instant request is unjustified and, if granted, would have due process implications as a result of Plaintiff proceeding ex parte to this point. Fundamental fairness requires that Plaintiff's request be denied as she has no justification for her delay.

### IV. Plaintiff did not act diligently in pursuing her amendments.

Plaintiff also did not act with diligence in pursuing her amendment. Each of Plaintiff's proposed claims are all based on information known to Plaintiff prior to her filing of the operative Complaint. *See Shukh v. Seagate Tech., LLC*, 873 F. Supp. 2d 1087, 1093 (D. Minn. 2012) (denying Plaintiff's motion to amend for failing to cure deficiencies with previously allowed amendments). Plaintiff has no explanation as to why, despite having knowledge of Mr. Franz and Dr. Rao's involvement (or lack of involvement rather), she delayed in seeking to add them as parties for nearly five months, on the last day upon which such a motion could be filed pursuant to the Court's Pretrial Scheduling Order.

Furthermore, though Plaintiff's meet-and-confer statement accurately describes a conversation between the parties on July 29, 2022, the parties first conferred about the proposed amendments in March of 2022. On March 8, 2022, Plaintiff sent a letter to APP stating that she intended to amend the operative complaint to name Seth Franz and Priyanka Rao as individual defendants in the matter. *See* Exhibit A to the Declaration of Ben Kinney. On March 9, 2022, APP responded to Plaintiff's letter and explained that APP would not consent to the proposed amendment. *See* Exhibit B to the Declaration of Ben Kinney.

Despite this clear communication, Plaintiff still failed to move for the instant amendment for nearly five months.

Plaintiff's Motion is therefore properly denied.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Amend is properly denied. Plaintiff's proposed addition of new parties and claims is futile because the Court does not have personal jurisdiction over Seth Franz and neither Seth Franz nor Priyanka Rao are "employers" under the FLSA or the MFLSA. Similarly, Plaintiff's proposed addition of a new claim is futile because both parties agree that there exists a written contract controlling the parties' relationship. Finally, Plaintiff's proposed amendments are untimely given that she waited nearly five months to make the instant request and already filed an amended complaint since she learned of any new information given rise to the instant proposed amendments. Lastly, Plaintiff's strategy of litigating piecemeal and generally over-litigating suggests that the instant Motion is brought for the improper purpose of driving up the costs of litigation for Defendants.

Plaintiff's Motion to Amend is properly denied.

Dated:  August 10, 2022                              Respectfully submitted,

                                                                 GORDON REES SCULLY
                                                                 MANSUKHANI, LLP


By:     /s/Benjamin Kinney
Suzanne L. Jones,  MN Bar No. 389345
Benjamin R. Kinney, MN Bar No. 395769
Gordon Rees Scully Mansukhani LLP
100 S. 5th Street
Suite 1900
Minneapolis, MN 55402
Ph: 612-351-5969
sljones@grsm.com
bkinney@grsm.com
*Attorneys for Defendant Associates in Psychiatry and Psychology, P.A.*


## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

Dated:  August 10, 2022                              GORDON REES SCULLY
                                                                 MANSUKHANI, LLP


By:     /s/ *Benjamin Kinney*
Suzanne L. Jones,  MN Bar No. 389345
Benjamin R. Kinney, MN Bar No. 395769
Gordon Rees Scully Mansukhani LLP
100 S. 5th Street
Suite 1900
Minneapolis, MN 55402
Ph: 612-364-1742
sljones@grsm.com
bkinney@grsm.com
*Attorneys for Defendant Associates in Psychiatry and Psychology, P.A.*

## AFFIDAVIT OF SERVICE

The undersigned, a non-attorney, being first duly sworn upon oath deposes and states that she served a copy of the foregoing document was electronically filed and served to counsel of record via the Court's CM/ECF PACER System on August 10, 2022.

*Adriana Flores*